In the Matter of the Application for the Removal of CHARLES A. RUPP and JAMES E. CURTISS from the Offices of Police Commissioner of the Police Board of the City of Buffalo.

LODOWICK H. JONES, Petitioner; CHARLES A. RUPP and JAMES E. CURTISS, Respondents.

*Base ball playing on Sunday — duty of police commissioners to arrest the players: although no warrant is issued.*

Under the provisions of section 265 of the Penal Code, prohibiting, among other things, " public sports" upon the first day of the week, and of section 177 of the Code of Criminal Procedure, authorizing a police officer, without a warrant, to arrest a person for a crime committed or attempted in his presence, it

is the duty of police commissioners, whose attention is called to the matter, to suppress the playing of base ball games on Sundays, and to arrest the parties engaging in such sport and to have them taken before a proper magistrate to be dealt with as the law provides, the same as in other cases of arrest for crimes committed in the presence of an officer.

A failure on the part of the police commissioners to so act is not excused by the fact that, in their opinion, an arrest should not be made unless a warrant was issued.

In the present case, the referee having found that the commissioners, in respect to the matters charged against them, acted in good faith, and without any intention of violating the law, the court considered that it would not remove them at present, but would permit them to continue in office, with a plain admonition, however, as to their duties in the future.

APPLICATION by the petitioner, Lodowick H. Jones, for the removal of the respondents, Charles A. Rupp and James E. Curtiss, from the offices of police commissioner of the police board of the city of Buffalo.

June 7, 1898, Lodowick H. Jones, a citizen elector and taxpayer, and an owner of real property in the city of Buffalo, presented to the Appellate Division of the fourth department of the Supreme Court a petition, as authorized by section 184 of the charter of Buffalo (Laws of 1891, chap. 105), setting forth that Charles A. Rupp and James E. Curtiss were police commissioners of the city of Buffalo, and that they, together with the mayor of said city, constituted the board of police commissioners of the city, the mayor being such *ex officio;* that the said Rupp and Curtiss had been such commissioners since May 1, 1897; that they constituted a majority of the board of police commissioners, and were responsible for the due and proper discharge of the duties of the said board; that they had control of the police force of the city; that during the spring and summer of 1897 and 1898, prior to the presentation of the said petition, games of base ball had been played on Sunday, on numerous occasions, and at a place called Franklin square, in the city, and that an admission fee was charged and received from the people who entered the base ball grounds to witness the said games; that the attention of the police commissioners had been called to these games, repeatedly, and that complaints had been made to the superintendent of police, and to the police officer in charge of the precinct embracing the said Franklin square, of the playing of such games on Sunday, but that

these officers had failed to take proceedings to prevent the same or to arrest offenders; that these facts had been brought to the knowledge of the police commissioners, and charges had been made against the said officers in respect to such games, and that the commissioners had refused to remove said officers, and dismissed the charges without investigation, and that the commissioners had been guilty of malfeasance and misconduct in failing to do their duty in regard to suppressing the base ball playing on Sunday, and six separate and distinct charges of malfeasance in regard to the same were particularly set forth in the said petition.

June 9, 1898, the court made an order requiring the said Charles A. Rupp and James E. Curtiss to show cause before the court on the 17th day of June, 1898, why an order should not be made removing them and each of them from the office of police commissioner.

June 17, 1898, the petitioner appeared, and the corporation counsel of Buffalo appeared for the police commissioners, and filed an answer to the said petition, among other things, denying that the commissioners had been guilty of any malfeasance or misconduct, as charged in the petition, and the court ordered that it be referred to William C. Watson, Esq., a counselor of this court, to take proof of the matters set forth in the petition, and that he report the same to this court, with his opinion thereon, on the 26th day of July, 1898. On that day the parties appeared, the report of the referee was presented containing findings of fact, and stating also the conclusion of the referee that the police commissioners acted in good faith with respect to each and all of the matters complained of, and with no desire or intent to evade any official duty, or to sanction, permit or condone any criminal offense; and that if they erred in the discharge of such duties it was an error of judgment only, and not an intentional departure from official duty, and that they ought not to be removed from their offices as police commissioners.

*Lodowick H. Jones*, petitioner, in person.

*W. H. Cuddeback, Corporation Counsel of Buffalo*, for the police commissioners.

PER CURIAM:

It clearly appears from the record before us that during the spring and summer of 1897 and 1898, and before the filing of the petition

herein, games of base ball were played in the usual manner at Frank-
lin square, a public place in the city of Buffalo, repeatedly on Sun-
day; that the police commissioners and police force under their
control had knowledge of these facts, and did not suppress the ball
playing or make arrests therefor, with a single exception which will
be noted hereafter.    Large crowds attended these games as specta-
tors, from whom an admission fee was collected.    The petitioner
called the attention of the police commissioners and the superintend-
ent of police, and the police captain in charge of the precinct in
which the games were played, and demanded that they be sup-
pressed, but the demand was not complied with, whereupon charges
were made against the superintendent and the precinct captain for a
violation of duty to the police commissioners, but they failed to
investigate the charges and dismissed them.

The commissioners instructed their subordinates not to arrest those
who participated in the base ball playing on Sunday, unless a warrant
was issued for their arrest, which the commissioners deemed the
proper course to pursue in the matter.    It does not appear that war-
rants were obtained and executed to any extent for the arrest of the
ball players, although the petitioner made numerous efforts to obtain
such warrants before various magistrates without success.

Base ball playing on Sunday is a misdemeanor, and is prohibited
by section 265 of the Penal Code, which is as follows: " All shoot-
ing, hunting, fishing, playing, horseracing, gaming or other *public
sports*, exercises or shows, upon the first day of the week, and all
noise disturbing the peace of the day, are prohibited."    (See *People
v. Moses*, 140 N. Y. 214.)

A peace officer may without a warrant arrest a person for a crime
committed or attempted in his presence.    (Code Crim. Proc. § 177.)

The police officers, therefore, who were present and witnessed the
playing of these games on Sunday were authorized to arrest the
participators in those games without a warrant.

The attention of the police commissioners and their subordinates
having been called to these games and their expected occurrence on
Sunday, it was the duty of the police to attend upon the games and
to suppress them by the arrest of the guilty parties.    The police
officers could have arrested the offenders and have taken them
before the proper magistrate to be dealt with as the law provided,

the same as in other cases of arrest without warrant for crimes committed in the presence of the officer.

The Legislature has authority to protect the Christian Sabbath from desecration by such laws as it may deem necessary, and it is sole judge of the acts proper to be prohibited, with a view to the public peace on that day. (*Neuendorff* v. *Duryea*, 69 N. Y. 557.)

Our laws for the observance of the Sabbath are founded upon the command of God at Sinai that we should "Remember the Sabbath Day to keep it holy."

These laws are substantially found in chapter 1 of title 10 of the Penal Code. They aver that the first day of the week by general consent is "set apart for rest and religious uses," and forbid those acts "which are serious interruptions of the repose and religious liberty of the community." They prohibit all labor on Sunday except works of necessity or charity. They close the courts and public offices on that day and they secure the protection and sanctity of religious meetings.

The experience of mankind demonstrates that the setting apart of one day in seven is not only conducive to the spiritual welfare of the people, but it is essential to the rest and recuperation which every one needs at stated intervals from the cares, burdens and anxieties of life. The Sabbath, therefore, is the result of the highest dictates of public policy as well as of religious duty. The Sabbath existed before Constitutions or statutes and was sanctioned by the common law.

The question remains whether these commissioners should be removed from office. Considerations which the evidence fairly present urged in their behalf are, that in the exercise of their best judgment they concluded that the proper way to bring the offenders at the base ball games to justice was by the more deliberate proceeding by warrant, and that they advised that proceeding. That early in the season of 1897 an arrest was made of a person violating the Sunday law in regard to base ball playing; the party arrested was taken before a police magistrate of the city, an officer of large experience, and he discharged the defendant, holding that he had not been guilty of a crime; and that the commissioners consulted this magistrate in the year 1898, in regard to further arrests, and the magistrate informed them that he would not hold persons

engaged in playing base ball on Sunday guilty of any crime. That they did not formally investigate the charges against the precinct captain and the superintendent of police for the reason that they understood all about the matter, and an investigation was unnecessary in order to determine whether these officers should be removed from office; and that as to the superintendent of police, the charges were dismissed as against him upon the advice of the corporation counsel of Buffalo, who, under section 163 of the charter of that city, was the law officer of the board of police.

The referee has found that the police commissioners, in respect to the matters charged against them, acted in good faith and without any intention to violate the law.

Another consideration urged in their behalf is that for a long time prior to the year 1897 base ball had been played in the city of Buffalo on Sunday, without complaint from the People, or any criminal proceeding taken by the authorities, and without any manifest disturbance of the public peace.

The petitioner urged with much force that these intelligent police commissioners should have known the law so plainly written in the statutes and observed it. It is true as a general proposition that ignorance of the law does not excuse its violation, but it is discretionary with the court acting upon the whole case, and in view of all the circumstances of this case, whether to remove these officers at the present time.

We have reached the conclusion not to make the removal at present, but to permit them to continue in office with the plain admonition as to their duties in the future, and with the law clearly laid down by this court for their guidance.

This conclusion works no condemnation of the course of the petitioner. His efforts to bring this matter to the attention of the courts and the public meet our approval, and as his actions in the matter will doubtless result in the enforcement of a salutary law in the city of Buffalo, his efforts in that behalf will be properly appreciated.

The prayer of the petitioner for the removal of the police commissioners denied on condition that the commissioners pay the costs of the proceeding.