(44 Misc. Rep. 118.)

### PEOPLE v. POOLE et al.

(Supreme Court, at Chambers, Kings County. June, 1904.)

1. SUNDAY—PUBLIC BASEBALL—MISDEMEANOR.

> Pen. Code, § 259, sets apart Sunday as a day of rest and religious uses, and prohibits acts which interfere with the repose and religious liberty of the community. Section 265 prohibits on such day all shooting, hunting, fishing, playing, and other public sports. *Held*, that a game of baseball, to which the public is invited, and for which an admission fee is charged, on the first day of the week, is a violation of such section 265.

Edward Poole and another were charged with playing baseball on Sunday. Motion to discharge. Denied.

John F. Clarke, Dist. Atty., for the People.
Bernard J. York, for defendants.

GAYNOR, J. In the case of Rath and others which was recently before me on the writ of habeas corpus, the complaint was simply that the defendants played a game of baseball on Sunday. There was no allegation that the game was a public one, or that it disturbed the peace of the day by noise. The complaint presented nothing but the case of ordinary private games of baseball or of golf on Sunday, which have long been allowed unmolested in the open fields in the outskirts of this city, and throughout the State, and which are not prohibited by the statute, as will presently be seen.

The present case is different. The complaint is of a public game of baseball: i. e., of a game held out to the public, i. e., of a game to which the public were invited, and to which an admission fee was charged. Is such a game prohibited by statute? I think it is.

The various penal Sunday statutes were collected together, and re-enacted as a chapter in revised form in our Penal Code, which was passed in 1881. Those curious on the subject may trace them through the colonial statutes of 1685 and 1695, the Revised Laws of 1813 and the Revised Statutes of 1829.

Section 259 of the Penal Code is as follows:

"The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community."

---

¶ 1. See Sunday, vol. 45, Cent. Dig. § 11.

This section is a sort of preamble; and it is noteworthy that the "general consent" of the community in observing Sunday is given by it as the reason and basis of our Sunday laws. The wishes of the community, therefore, should have much to do with their enforcement, as is the case with all laws which depend for their vigor on public opinion.

Section 262 summarizes under general heads the acts so prohibited, the second head being in the words "Public sports and shows." This word "public" excludes private sports and shows. This section was repealed in 1883, but reference to it is still necessary in getting at the intention and scope of the whole chapter.

Section 265 enumerates the acts embraced under this head, and is as follows:

"All shooting, hunting, fishing, playing, horse racing, gaming or other public sport, exercises, pastimes or shows, upon the first day of the week, and all noise disturbing the peace of the day, are prohibited."

Here, again, the prohibition seems to be against public acts only. The enumeration of the specific things prohibited is followed by the general clause, "or other public sports, exercises, pastimes or shows." This general clause is not only expressly limited to public sports, etc., but is a continuation of the same category of acts, and not the introduction of a new category. But it suffices for the present case that the general clause is limited to public sports, etc., for unless it embraces baseball, golf and all other games not specified by name in the section, they are not prohibited at all. And a public sport, game, show or entertainment is one held out and given to the public. In 1883 this section was amended by dropping the word "pastimes."

Such is the interpretation of the statute without the aid of any side light. But if we go outside of the statute, and resort to the Holy Scripures and to Christian rules, as some insist must be done, to aid in getting at its color and scope, and into the intention of the Legislature, the interpretation must remain the same. Physical exercises and games are not forbidden on the Sabbath in the Ten Commandments. Only work is there prohibited. "Six days shalt thou labor and do all thy work, but the seventh day is a sabbath unto the Lord thy God; in it thou shall not do any work" (Revised Version). Moreover, this commandment relates to the seventh day of the week, and not to the first. In the New Testament there is no Sunday law at all. And in the Christian church there never have been any rules prohibiting physical games and exercises on Sunday. Those who say the contrary only speak at random, and from lack of education. Not long ago a complaint was made to the Archbishop of Canterbury that Mr. Balfour, the prime minister of England, played the game of golf on Sunday. The Archbishop's official response in writing was that "it is certain that the Christian church has never laid down detailed directions affecting the actions of individuals in this matter. Each of them is responsible to God for so using the Lord's day as to fit him best for the working days

that follow." It is not to be understood that the Legislature meant to be stricter than the divine law of the Hebrew scriptures, or than the rules of the Christian church, excepting the extent to which it has expressly gone.

And if we view the statute as a health law, we shall still not perceive any intention in it to prohibit all out-of-door games and exercises on Sunday, for to prevent them, especially in the cities, would injure the health of the community and materially increase the death rate. The prohibition is only against public games and exercises, namely, those to which the public are invited, because the statute presumes that they interrupt the repose of the community; and that is the case against these defendants.

Our judicial reports furnish only three cases on the criminality of games or sports on Sunday, owing, no doubt, to the fact that the people of this State have not been prone to meddle with how their neighbors spend Sunday. In the Case of Dennin, 35 Hun, 327, the conviction of the defendant for playing baseball on Sunday was reversed on appeal in the Supreme Court, because the game was not one held out to the public, although played in public view, and there was no evidence that it interrupted the repose of the community. The Case against Moses, 140 N. Y. 214, 35 N. E. 499, was for fishing in a stream on Sunday, and the defendant was convicted. Three judges of our highest appellate court voted that the offense was made out by the mere act of fishing, regardless of whether it interrupted the repose of the community. Three judges dissented from this view. The remaining judge of the seven voted to uphold the conviction on the ground that there was sufficient evidence to show that the repose of the community had been interrupted. The decision was therefore indecisive of the question whether the mere act itself constituted a criminal offense, three judges out of the seven being squarely against that view, and another being unwilling to join in it. The Rupp Case, 33 App. Div. 468, 53 N. Y. Supp. 927, was an application to remove a police commissioner for not causing the arrest of persons playing the game of baseball habitually in the same place on Sundays. The evidence there was that the game was a public one, an admission fee being charged, and also that it interrupted the repose of the community; and it was therefore held that the game was a criminal offense. The construction which I give to the statute is in harmony with these decisions.

The motion is denied.