PEOPLE v. HEMLEB.

(Supreme Court, Appellate Division, Second Department. June 29, 1908.)

1. STATUTES—CONSTRUCTION—PENAL STATUTES.
    The rule that the words of a statute must be construed in connection with the other words thereof is especially applicable in the construction of criminal statutes, for such statutes cannot be strained in construction to make out a crime.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 322, 323.]

2. SUNDAY—AMUSEMENTS—SHOWS—STATUTES—CONSTRUCTION.
    Pen. Code, § 265, prohibiting "all shooting, hunting, fishing, playing, horse racing, gaming or other public exercises or shows" on Sunday, first enacted by Laws 1788, c. 42, prohibiting "shooting, fishing, sporting, playing, horse racing, hunting, frequenting tippling houses or any unlawful exercise" on Sunday, and carried into the Revision of 1830, with the addition of the word "gaming," and subsequently modified by adding "or other public sports, exercises or shows," does not, when considered in

connection with section 277, prohibiting theatrical plays, etc., on Sunday, prohibit one from giving on Sunday an indoor exhibition; consisting of throwing on a canvas pictures and of piano playing at intervals.
Hooker and Rich, JJ., dissenting.

Appeal from Court of Special Sessions, New York County.

Henry Hemleb was convicted of violating the Sunday law, and he appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Rutherford W. Kathan (Geo. Bethune McCartee, on the brief), for appellant.

Peter P. Smith (John F. Clarke, Dist. Atty., on the brief), for the People.

GAYNOR, J. The defendant was accused and convicted of conducting an illegal "public show" on Sunday, in that he exhibited pictures by throwing them on a canvas screen in the usual way, and at the same time had a piano played at intervals. No indecency or immorality is charged; that comes under another head of crime. The case would be the same however edifying and improving the pictures; that they even illustrated the life and mission of Jesus, or the events of the Crusades, would make no difference. Nor is there any question in the case of whether the defendant unlawfully carried on business on Sunday inasmuch as he charged an admission fee. No such charge was made against him, and it may be that none would lie.

The only law that applies to the case is section 265 of the Penal Code. It prohibits "all shooting, hunting, fishing, playing, horse racing, gaming, or other public exercises or shows, upon the first day of the week, and all noise disturbing the peace of the day." The origin of this law is in chapter 42 of the Laws of 1788, which prohibited servile work and travelling, and "shooting, fishing, sporting, playing, horse racing, hunting, frequenting tippling houses, or any unlawful exercises or pastimes," on Sunday. This was carried into the Revised Laws of 1813 without change, and into the Revised Statutes of 1830 with the addition of "gaming." The addition in the Penal Code is the phrase at the end, "or other public sports, exercises or shows" —the meaningless phrase "or any unlawful exercises or pastimes" being dropped. The statute as it stood before the adoption of the Penal Code indisputably related to out-of-door sports, or things in the open, only. This was the manifest legislative intention. To these public things (public in that sense) the Penal Code added "or other public sports, exercises or shows." These words have to be construed in line with what precedes. They have to be construed in the light of the society of words in which they are found, under two familiar maxims which apply in full force in civil cases (Matter of Tilden's Executors, 98 N. Y. 434; And. L. Dic. 394), and all the more so in criminal cases for obvious reasons; for criminal statutes cannot be left in doubt, nor strained in construction to make out a crime. No crime exists which is not defined expressly or by necessary implica-

tion. The general words in question mean other like public sports, exercises or shows. The lineage of the statute as it is in the Penal Code shows its meaning. The original legislative object has never been changed, but continued in each amendment. There is no ground for the argument that the general intention and scope of the original act has been departed from.

This becomes all the more manifest by the fact of the Legislature passing a subsequent separate act prohibiting a long list of theatrical or stage plays, and performances not to be classed as out-of-door or open. It was first made applicable to the city of New York only (Laws 1860, p. 999, c. 501), and afterwards to the whole state, and is section 277 of the Penal Code. If the phrase "or other public sports, exercises or. shows" in section 265 is to be given the meaning contended for by the learned district attorney, and adopted below, i. e., that it covers all shows or exhibitions indoors or out-of-doors or open to which the public is invited, then section 277 adds nothing; it becomes mere rigmarole and superfluous.

It will not do to say that the legislative mind was so pregnant of the. intention of stopping what is called the desecration of the Christian Sabbath that the courts cannot set the bounds to the statute which the words used, construed in the usual way, set, without thwarting the legislative intention. When it is considered that nowhere outside of the British Isles has the Old Testament notion of a still Sabbath ever existed in the Christian world, it is impossible to attribute to the aggregate Christian mind, as rather fairly represented in our Legislature, with such a varied national lineage in its membership, any such strictness or singleness of purpose. Christians of no nation, church or sect, except in the British Isles, and not there until recent centuries, ever entertained the Old Testament notion of a still Sabbath, but favored and practiced innocent and healthy exercises and amusements after church on Sunday. John Knox visited John Calvin of a Sunday afternoon at Geneva and found him out back at a game of bowls on the green.

The judgment should be reversed.

WOODWARD and JENKS, JJ., concur.

HOOKER, J. (dissenting). With the propriety or impropriety of the so-called Sunday laws we as a court have nothing to do. Our function is to give effect to the statutes as they are enacted by the Legislature. The Legislature has authority to protect the Christian Sabbath from desecration by such laws as it may deem necessary, and it is the sole judge of the acts proper to be prohibited, with a view to the public peace on that day. Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. Rep. 235; Matter of Rupp, 33 App. Div. 468, 53 N. Y. Supp. 927; People v. Moses, 65 Hun, 161, 20 N. Y. Supp. 9; Lindenmuller v. People, 33 Barb. 548. That the courts are not entirely blind to the reasons which underlie the enactment of Sunday laws is apparent from the following quotations from the opinion in Matter of Rupp, supra:

"Our laws for the observance of the Sabbath are founded upon the command of God at Sinai that we should 'Remember the Sabbath day to keep

it holy.' * * * The experience of mankind demonstrates that the setting apart of one day in seven is not only conducive to the spiritual welfare of the people, but it is essential to the rest and recuperation which every one needs at stated intervals from the cares, burdens, and anxieties of life. The Sabbath, therefore, is the result of the highest dictates of public policy as well as of religious duty. The Sabbath existed before Constitutions or statutes, and was sanctioned by the common law."

The appeal is by the defendant from a judgment of conviction of a violation of section 265 of the Penal Code. The evidence disclosed that on Sunday in a large room, located on Atlantic avenue, in the borough of Brooklyn, the defendant produced moving pictures by means of a stereopticon upon canvas or some similar material, that a piano was played in connection with such pictures, that an admission fee was charged to the room, and that about 250 people were present, viewing the pictures and listening to the music. Section 265 of the Penal Code provides as follows:

"All shooting, hunting, fishing, playing, horse racing, gaming or other public sports, exercises or shows, upon the first day of the week, and all noise disturbing the peace of the day, are prohibited."

One question for determination is whether the moving picture exhibition was a show, and, if so, whether it was a public show, within the meaning of section 265 of the Penal Code. The law is plainly written, and its meaning cannot be obscured in much doubt. The Century Dictionary defines "show" as a sight or spectacle; an exhibition; a pageant; a play. The numerous cases at Special Term in the different departments, which have dealt with questions similar to that raised by this appeal, have all referred to the throwing of moving pictures upon a screen as a moving picture exhibition. The demonstration was certainly a show. It is suggested that, because the Legislature enacted section 277 of the Penal Code simultaneously with section 265, and therein forbade the performance of any tragedy, comedy, ballet, farce, negro minstrelsy, dancing, wrestling, boxing with or without gloves, sparring contests, trial of strength, or any part or parts therein, or any circus, equestrian, or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, or rope dancers, on the first day of the week, and failed to declare against moving picture exhibitions therein, it must not have intended that section 265 should cover exhibitions of this kind. There are two answers: First, section 265 is so plain that it needs no astute interpretation, and successfully resists involved distinction and discrimination; and, second, it is provided by the latter part of section 277 that violations of its provisions are the subject of special penalties therein mentioned, in addition to the punishment provided for violation of section 265.

The Century Dictionary defines the term "public" as follows:

"Of or belonging to the people at large; relating to or affecting the whole people of a state, nation, or community; opposed to private; open to all the people; shared in or to be shared or participated in or enjoyed by people at large; not limited or restricted to any particular class of the community; as, a public meeting."

It is perfectly clear that any orderly person would have been permitted to enter the room where the moving pictures were presented

by the defendant and view them as a part of the audience. The exhibition was not a private one. It was the opposite, namely, a public exhibition or show, which might be shared or participated in by any unobjectionable members of the people at large. To deny that the moving picture exhibition was other than a public show violates the common and well-accepted meaning of the English words. It is said that the section refers to exhibitions or shows held out of doors, rather than those held indoors, because the reading of the section is that all shooting, hunting, fishing, playing, horse racing, gaming, or other public sports, exercises, or shows are prohibited. It may be admitted that hunting, fishing, and horse racing are invariably enjoyed out of doors. It cannot be doubted, however, that shooting, playing, and gaming are often enjoyed within doors, so the distinction that the word "public" means out of doors must fall. But, however this may be, all of the sports and exercises specifically named in the section may be treated as public; that is, they may be shared or participated in or enjoyed by the people at large. Hence, when the Legislature provides that other sports, exercises, or shows are prohibited on Sunday, it merely means that, in addition to the public sports and exercises mentioned theretofore in the section, other sports, exercises, and shows, which may be shared or participated in or enjoyed by the people at large, are also prohibited on Sunday.

It is also said that, because the section further provides, "and all noise disturbing the peace of the day," the fair construction thereof is that no public shows or exercises are prohibited, unless they are accompanied by noise disturbing the peace of the Sabbath. The section does not so provide; in fact, it provides exactly the contrary, in plain language which is unmistakable. It prohibits public shows, and also prohibits all noise disturbing the peace of the day. It is impossible to construct sentences in our language whose meaning is clearer than that of the sentence in this section. If, however, more must be said in relation to what the exact intent of the Legislature was in framing the chapter relating to offenses against religious liberty and conscience, it is to be noticed that distinct provision is made by section 259 as follows:

"The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community."

Shooting is by section 265 specifically mentioned, and hence, under the definition of section 259, shooting is deemed by the Legislature to be a serious interruption of the repose and the religious liberty of the community. Public shows are likewise mentioned by section 265, and, under the same definition, must be of the same character of an interruption. All noise disturbing the peace of the day is specifically mentioned in section 265, and under the same definition, in addition to shooting and public shows, it is also a serious interruption of the repose of the day. I am aware that the opinion of Judge Earl in People v. Moses, 140 N. Y. 214. 35 N. E. 499, was the expression of the views of but three members of the court; the fourth member

(to make a majority) concurring in the result upon a different ground. I think, however, that the following from Judge Earl's opinion states the law, and I desire to adopt it as my interpretation thereof:

"We have, therefore, only to construe the statutes and ascertain whether they prohibit the act complained of. Section 259 of the Penal Code provides that 'the first day of the week, being by general consent set apart for rest and religious uses, the law prohibits the doing on that day certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community.' It is not the meaning of this section that every act which is claimed to be a violation thereof must, in fact, be a serious interruption of the repose and religious liberty of the community; but the Legislature in subsequent sections specified certain acts which are declared to be serious interruptions of the repose and religious liberty of the community—acts, necessarily described in general and comprehensive terms, which the lawmakers believed had a general tendency to interfere with Sunday as a day of rest and religious worship. Section 263 prohibits all labor on Sunday, excepting works of necessity or charity, and it matters not whether the prohibited labor be public or private. · Wherever it is performed it is prohibited. In section 265 particular acts are specified which are prohibited, as follows: 'All shooting, hunting, fishing, playing, horse racing, gaming or other public sport, exercises or shows upon the first day of the week, and all noise disturbing the peace of the day, are prohibited.' In sections 266, 267, and 268 other acts are specially prohibited. It is thus seen that among the acts specially prohibited on Sunday is fishing. That is absolutely prohibited on Sunday, everywhere and under all circumstances. It may be done in a community where it does not offend the sensibilities of any one, it may be done in such a manner as not to disturb the peace or interrupt the repose or religious liberty of the community, and yet the law is violated. It is quite unreasonable to suppose that the Legislature meant that whenever any of these acts are charged as a violation of the law an issue can be framed and tried as to their public, offensive, or disturbing character. The Legislature has settled that matter by prohibiting them absolutely."

I think the moving picture exhibition was a public show, which by section 265 of the Penal Code is prohibited on Sunday.

The sentence imposed by the court was that the defendant pay a fine of $100, or in default thereof be committed for 30 days. The penalty was greater than the statute permits. The Court of Special Sessions had jurisdiction of the crime, and, as held in Erbe v. Monteverde, 13 Misc. Rep. 404, 35 N. Y. Supp. 102, the jurisdiction was exclusive. See Steinert v. Sobey, 14 App. Div. 505, 509, 44 N. Y. Supp. 146. The offense for which the defendant was convicted was, however, punishable by a fine of not more than $10, or by imprisonment in the county jail not exceeding 5 days, or by both (sections 259, 260, 269, Pen. Code). It is not necessary to send the whole case back for a new trial; for, where the sentence is not legal, the appellate court may remedy the error in compliance with the law. People ex rel. Stokes v. Riseley, 38 Hun, 282.

The judgment of conviction should therefore be modified, by directing that the fine be $10, and, as so modified, affirmed.

RICH, J., concurs.