WILLIAM FOX AMUSEMENT CO. et al. v. McCLELLAN, Mayor, et al. (four cases).

(Supreme Court, Special Term, Kings County. January, 1909.)

1. LICENSES (§ 38*)—REVOCATION—POWER OF MAYOR.

Though by ordinance a mayor is given power to revoke licenses, he may not exercise such power arbitrarily, and the proper test of the right to revoke is whether there was a cause having relation to the duties of the mayor and the welfare and protection of the people.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. § 38.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. THEATERS AND SHOWS (§ 3*)—LICENSES—MOVING PICTURE SHOWS—ORDER OF REVOCATION.

A general order issued by a mayor revoking all licenses granted to moving picture shows, on a showing of causes which did not necessarily affect all such licensees, cannot be sustained.

[Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 3.*]

3. COURTS (§ 91*)—STARE DECISIS—DECISION OF APPELLATE DIVISION—SPECIAL TERM.

A decision of a question of law by the Appellate Division should control a judge at Special Term.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 325; Dec. Dig. § 91.*]

4. STATUTES (§ 241*)—CONSTRUCTION—PENAL ACTS.

A statute making criminal an act otherwise lawful should not be strained beyond its plain import to enlarge the field of crime.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 322; Dec. Dig. § 241.*]

5. SUNDAY (§ 6*)—KEEPING OPEN ON SUNDAY—MOVING PICTURE SHOWS—STATUTES—"PUBLIC SHOWS."

Moving picture shows in a hall, for which admission is charged, are not within the terms of Pen. Code, § 265, forbidding the exhibition on Sunday of certain specified "public shows," not including moving picture shows, since the rule of ejusdem generis applies, and "public shows" mean out of door shows.

[Ed. Note.—For other cases, see Sunday, Dec. Dig. § 6.*]

6. SUNDAY (§ 6*)—MOVING PICTURE SHOWS—KEEPING OPEN ON SUNDAY—STATUTES.

A moving picture show is not within Pen. Code § 277, and section 1481 of the charter (Laws 1897, p. 522, c. 378), prohibiting specified indoor exhibitions on Sunday; such shows not being one of those specified.

[Ed. Note.—For other cases. see Sunday, Dec. Dig. § 6.*]

7. SUNDAY (§ 5*)—"SECULAR BUSINESS"—MOVING PICTURE SHOWS.

A moving picture show, for which admission is charged, is not a "secular business," prohibited on Sunday by Pen. Code, § 259, providing that specified acts are prohibited as serious interruptions of the repose and religious liberty of the community, and specifying particular acts in sections 263, 265–268, 277, which did not include such shows.

[Ed. Note.—For other cases, see Sunday, Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 7, p. 6383.]

8. SUNDAY (§ 5*)—"SECULAR BUSINESS"—MOVING PICTURE SHOWS.

Nor is such show rendered a "secular business" by the fact that it required the employment of individuals, in that such individuals are performing unlawful labor on Sunday, where it is not shown that such persons were not keeping another day holy, under Pen. Code, § 264, rendering such persons immune from prosecution.

[Ed. Note.—For other cases, see Sunday, Dec. Dig. § 5.*]

9. INJUNCTION (§ 7*) — REVOCATION OF LICENSES — ADEQUACY OF. REMEDY BY MANDAMUS.

Where relief is sought against an action of a mayor in revoking all licenses for moving picture shows for causes not common to all, resort to equity by an injunction is the proper remedy, as mandamus, involving a trial by jury under an alternative writ, would afford inadequate relief.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. INJUNCTION (§ 114*)—PARTIES—ONE ACTING FOR MANY.

One licensee for a moving picture show may maintain a suit in behalf of himself and all other licensees of such shows to restrain the mayor from acting under a general order revoking all licenses.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 207; Dec. Dig. § 114.*]

Suits by the William Fox Amusement Company and others against George B. McClellan, as mayor, etc., and another, to enjoin a revocation of licenses, heard with three other cases. Motions for temporary injunctions. Motions granted.

Ira Leo Bamberger, Gustavus A. Rogers, and Sidney Lowenthal, for the motion.

William B. Crowell, opposed.

BLACKMAR, J. These are motions for temporary injunctions to protect the plaintiffs in the exercise of their alleged rights under certain common show licenses for moving picture exhibitions pending actions to rescind an order of the mayor revoking all such licenses. In three of the actions the plaintiffs sue to protect their own licenses. In the other the plaintiff brings the action for his own benefit, as president of the moving picture exhibitors' association, and in behalf of all other holders of such common show licenses alleged to be similarly situated.

Common show licenses for moving picture exhibitions have been granted by the mayor under the charter and ordinances to the number of about 550. Recently the mayor learned that certain of these licenses had been obtained by bribery. An investigation was begun, which disclosed such conditions at many of the places that a public meeting was called by the mayor to be held on December 23, 1908, on the advisability of closing moving picture shows on Sundays and to consider the conditions of such shows generally in regard to the safety of their patrons. On such hearing representations were made to the mayor by addresses, by the evidence of witnesses, and the reports of the investigators, showing that at many of such places the protection against fire was inadequate, that the circumstances under which the shows were conducted were demoralizing to children, by whom they were largely patronized, that many of the pictures shown were vulgar and licentious, and were representations of lawlessness and crime, and that they were generally kept open on Sunday. The mayor thereupon issued an order revoking and annulling each and every license issued by him for a moving picture show. The validity of this order is in question on these motions.

The licenses in question are common show licenses issued under sections 300 to 309 of the Revised Ordinances of the city, which were enacted pursuant to the authority of section 51 of the charter (Laws 1901, p. 30, c. 466). The mayor has express authority to revoke or suspend these licenses (section 307 of the Revised Ordinances). In People ex rel. Lodes v. Board of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894, the court decided that a license granted by the board of health to sell milk was not property, that there existed an implied power of revocation, and that such power could be exercised

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as an administrative or executive act without notice or a hearing. I assume that these principles there laid down as governing licenses to sell milk issued by the board of health under the Sanitary Code also apply to licenses for common shows issued by the mayor under the city ordinances. Certainly this assumption is favorable to the defendants, for the only alternative is that they are property and can only be revoked after a hearing.

But it is said in the Lodes Case that if the action (of revocation) is arbitrary, tyrannical, or unreasonable, or is based upon false information, the relator may have a remedy through mandamus to right the wrong. In the Lodes Case the power of revocation was implied from the nature of the license. In this case the power is expressly conferred by section 307 of the ordinances. But this does not make any difference. The power is given to the mayor in trust for the purpose of enabling him to properly perform the executive duties of his office. It cannot be exercised arbitrarily. Tribune Ass'n v. Sun Printing & Publishing Ass'n, 7 Hun, 175; Davis v. Mayor, etc., of New York, 1 Duer, 451; Cushing v. Board of Health, 13 N. Y. St. Rep. 783; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155. There is, therefore, a limit to the exercise of the power of revocation. It must not be arbitrary, tyrannical, or unreasonable. These words are exceedingly indefinite, and present in themselves no sure rule of conduct which can be applied in determining whether the power of revocation is well exercised. There may be a great difference of opinion as to the meaning of these words in their application to the question of the revocation of licenses. To my mind, after a license has been granted, paid for, and acted upon, a revocation without cause is unreasonable and arbitrary. The test I shall apply is whether there was a cause having relation to the duties of the mayor and the welfare and protection of the people which justified this general order of revocation.

I have read, not only the affidavits submitted, but the record of the proceedings before and the reports to the mayor. A condition was disclosed which justified action. The mayor might perhaps have revoked those licenses under whose protection indecent or improper pictures were shown and also those which were acquired by bribery. He could have revoked or suspended, until required changes should be made, the licenses of those places insufficiently safeguarded against fire; and it is impossible that there were other conditions shown at particular places which furnished cause for revocation. But the mayor did not confine his act to those places against which cause was shown. He revoked each and every license he had granted. He included in the same condemnation the innocent and the guilty. If the conditions showed that all moving pictures shows had proved to be unsafe or pernicious in their influence, perhaps his action might have been sustained. But his order contained an assurance that he would relicense such as should comply with conditions prescribed by him. This is conclusive evidence that the licenses were not revoked for a cause common to them all and inherent in the nature of the business.

The corporation counsel in his brief lays great stress on the alleged fact that these places were open on Sunday, and the provision in the

order of the mayor that he should require a promise to close on Sunday as a condition to granting new licenses indicates that the Sunday question largely influenced the order. If all these shows persistently violated the law in this respect, it may be a sufficient cause to terminate the privilege. This raises the much-mooted question whether the public exhibition of moving pictures in a hall violates section 265 of the Penal Code. The decision of a question of law by the Appellate Division should control a judge at Special Term. This question was squarely decided in People v. Hemleb, 127 App. Div. 356, 111 N. Y. Supp. 690. It was there held that a moving picture show was not a public show, within the meaning of these words as used in section 265 of the Penal Code. Prior to this the decisions at Special Term were conflicting; but the law is now settled in this department as decided in that case.

It was suggested in one of the addresses before the mayor that the Hemleb Case did not control, for in the prevailing opinion reference was made to the fact that no admission fee was charged. It was there held that, applying the rule of ejusdem generis, a public show means an out of door show. If that case is correctly decided, these exhibitions are not public shows even if admissions are charged. Those who are curious to see the variety of decisions rendered at Special Term and elsewhere may peruse People v. Finn, 57 Misc. Rep. 659, 110 N. Y. Supp. 22; People ex rel. Worth v. Grant, 58 Hun, 455, 12 N. Y. Supp. 879; United Vaudeville Co. v. Zeller, 58 Misc. Rep. 16, 108 N. Y. Supp. 789; People v. Dennin, 35 Hun, 327; Eden Musee American Co. v. Bingham, 58 Misc. Rep. 644, 110 N. Y. Supp. 210; Matter of the City of N. Y., 57 Misc. Rep. 53, 108 N. Y. Supp. 197; Moore v. Owen, 58 Misc. Rep. 332, 109 N. Y. Supp. 585; Keith & Proctor Amusement Co. v. Bingham (Sup.) 108 N. Y. Supp. 205; People v Poole, 44 Misc. Rep. 118, 89 N. Y. Supp. 773; People v. Moses, 140 N. Y. 214, 35 N. E. 499, and other cases to which they will there find reference.

The indoor exhibitions and performances which are prohibited by section 277 of the Penal Code and section 1481 of the charter (Laws 1897, p. 522, c. 378), so far as it is now in force, do not include moving picture shows. If they did, theatrical and not common show licenses would be required. Does the fact that an admission fee is charged make such a show a "business" prohibited under some other section? Specified acts are prohibited as serious interruptions of the repose and religious liberty of the community (§ 259). None others are unlawful. There is no general prohibition against business by that name. Labor, excepting works of necessity or charity (§ 263), public sports (§ 265), all trades, manufactures, and agricultural or mechanical employment (§ 266), public traffic (§ 267), serving process (§ 268), and theatrical and other performances (§ 277) are prohibited. These acts are "specified acts." The general and governing clause of Pen. Code § 259, in the light of which all other sections must be read, expresses in terms that the legislative condemnation fell upon "specified acts" determined to be serious interruptions of the repose and religious liberty of the community. The Legislature did not see fit to prohibit generally all secular business and employment, but only those defined

and specified.   A statute making criminal an act otherwise lawful should not be strained beyond its plain import to enlarge the field of crime.

Moving pictures shows are not, according to the Appellate Division, public shows.  They are not enumerated among "other performances" in section 277 of the Penal Code, and I cannot find that they fall under the prohibition of any other section.  I do not mean to say that these shows may not be of such a nature as to be illegal, but simply that all exhibitions of moving picture shows on Sunday are not necessarily illegal so long as the Hemleb Case is unreversed.  It must be borne in mind that I am inquiring whether a cause was shown for the revocation of every license, irrespective of the character of the exhibition or the conditions under which it was made.

It was also suggested that these shows necessarily require the employment of an operator, a ticket seller, and others who are performing unlawful labor, and therefore they may all be suppressed.  But it seems to me that this is a question between the people of the state in a criminal prosecution and each individual who is charged with unlawful labor; and each case must be decided on its peculiar facts as to whether the acts are labor and whether it is such as is prohibited. Not every act in pursuance of a vocation is prohibited labor, and Sunday labor is not forbidden those who keep another day holy (§ 264).

Perhaps all that I have said on the subject of Sunday laws is mere dictum, for it nowhere appears that all of these shows are open on Sunday.  Neither is it unlawful to admit minors to these shows.  People v. Samwick, 127 App. Div. 209, 111 N. Y. Supp. 11.

On reviewing the whole case, I cannot find that there is any cause for the revocation of these licenses which is shown to be common to all these shows.  The fact that the method adopted by the mayor is the most effective way of reaching the result of desirable regulations which he proposed does not justify the revocation of licenses in cases where no cause is shown.  Except in that it weakens the moral fiber of the people, a benevolent despotism is probably the ideal government. But ours is a government of law.  The right of citizens to carry on their respective vocations, whether under municipal licenses or not, does not depend on arbitrary administrative or executive action.  When a vocation duly licensed is lawful it cannot be made unlawful by executive decree, unless a sufficient cause exists to revoke the license; for a revocation without such cause is arbitrary and not within the scope of executive power.  Within certain limits the discretion of the mayor to determine when a license shall be revoked will not be controlled.  Within those limits the court will not substitute its judgment for that vested in the chief executive of the city; but a general order of revocation, which is concededly based on an abuse of the privilege by a part only of the licensees, is not a valid exercise of the power.

Neither can I examine each case to determine whether the revocation is valid as to some.  This would be equivalent to the court exercising the power of revocation given by the ordinances to the mayor.  I cannot tell which licenses the mayor would have revoked if he had discriminated.

It is claimed that the conditions disclosed were so bad that a general order was justified, and the Slocum disaster is cited as an example of the necessity for such course. I fail to see the force of this illustration. A revocation of every steamboat license in the port prior to the disaster would certainly have averted it. But this does not show that licenses may lawfully be revoked without cause. Whether, under the circumstances, an order suspending all licenses for moving pictures pending an examination was justified, I am not deciding. But a general order finally revoking all licenses was not necessary. It is stated in the opposing affidavits that from 25 or 30 places a day can be examined. Therefore in 20 days, at the most, every case could have been investigated, and the licenses sustained, revoked, or suspended, as each case required.

It seems to be conceded, or at least is not disputed, that an action in equity is the proper remedy. Usually the power of supervision of municipal corporations and officers is exercised by a court of law through the writ of mandamus, and a resort to equity is justified only when the case falls within some recognized head of equity jurisdiction. But the courts will exercise whatever power is necessary to afford a remedy, and in the present case I think a resort to equity is proper. Mandamus, involving a trial by jury under an alternative writ, would afford inadequate relief.

The question whether one licensee can maintain an action for all is not discussed by the corporation counsel, and the argument of the plaintiff is confined to the citation of Eickelberg v. Board of Health, 47 Hun, 371. Such a procedure under circumstances very like the present seems to have been sustained in that case. The act of the mayor was a single act, and it affected all licensees alike. In popular phraseology, the validity of the order is a 'matter of common and general interest. It has been held that, where the wrongful act complained of affected alike several riparian owners, an action could be maintained one for all. Climax Specialty Co. v. Seneca Button Co., 54 Misc. Rep. 152, 103 N. Y. Supp. 822; Strobel v. Kerr Salt Co., 164 N. Y. 323, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643. See, also, Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; City of Chicago v. Collins, 175 Ill. 445, 51 N. E. 907, 49 L. R. A. 408, 67 Am. St. Rep. 224.

An injunction may therefore issue in all the actions, restraining the defendants, their agents, and employés, from acting under such order of revocation pending the action. The order should plainly provide that it does not restrain the mayor from revoking any or all of the licenses for cause, and does not restrain any person whatsoever from proceeding against the plaintiff or any of the licensees for violating the law, except that they must not be disturbed for the alleged cause of maintaining a common show without a license, on the theory that the license has been terminated by the general order of revocation mentioned in the pleadings and affidavits.

Motions granted, as indicated, with costs. Settle order on notice.