PEOPLE v. DIXON.

CRIMINAL LAW — SUNDAY THEATRES — MOVING PICTURE SHOW — ARREST — RIOT — MISDEMEANORS.

The enforcement of section 5912, 2 Comp. Laws, forbidding shows, work, etc., on Sunday, under a penalty of not more than $10, must be by a civil action to collect the penalty: the act of conducting a moving picture show on Sunday does not amount to a misdemeanor and may not be prosecuted by an indictment; nor did the assemblage of the parties owning or operating the theatre and 30 or more persons in such theatre for the respective purposes of conducting and witnessing the exhibition of moving pictures and the refusal of such persons to disperse as commanded by the sheriff amount to a violation of section 11334, 3 Comp. Laws, relating to riots and unlawful as-

semblages, so as to bring the violators within the authority for summary arrest provided for by that statute, in the absence of disorder, violence, or breach of the peace.

Exceptions before sentence from Ionia; Davis, J. Submitted April 23, 1915. (Docket No. 125.) Decided September 29, 1915.

Charles Dixon was convicted of operating a moving picture theatre on Sunday in violation of statute. Reversed; respondent discharged.

*Herbert C. Hall,* Prosecuting Attorney, and *Alfred R. Locke,* Assistant Prosecuting Attorney, for the people.

*John Nichol* and *R. A. Colwell,* for respondent.

BROOKE, J. Respondent stands convicted under the following information:

"Alfred R. Locke, prosecuting attorney in and for the county of Ionia aforesaid, for and in behalf of the people of the State of Michigan, comes into said court, in the November term thereof, in the year one thousand nine hundred and fourteen, and gives the court here to understand and be informed that one Charles Dixon and Guy Alexander together, with thirty and more persons whose names are to this complainant unknown, late of the city of Belding, in the county of Ionia, and State of Michigan, heretofore, to wit, on the 11th day of October, A. D. 1914, the same being the first day of the week, commonly called Sunday, at a certain theater and show building in the city of Belding at the city of Belding, in the county of Ionia aforesaid, unlawfully did assemble and meet together to disturb the peace and to listen to, to see, and to conduct a certain show and entertainment and public exhibition in said theater and show building, and while so unlawfully assembled and meeting together in violation of law, one Lucius Stoddard, then and there a deputy sheriff of the county of Ionia, did go among them, the said Charles Dixon and Guy Alexander, and

the said thirty and more persons, and did then and there command the said Charles Dixon and Guy Alexander and all the said persons therein in said theater and show building assembled, immediately and peaceably to disperse, and that he, the said Charles Dixon, and Guy Alexander, being so commanded, and being then and there unlawfully assembled as aforesaid with the said thirty or more other persons, did wilfully, maliciously, and unlawfully refuse and neglect immediately and peaceably to disperse and leave the said theater and show building and unlawful assembly, and did then and there, contrary to the order and command of the said officer, wilfully, wickedly, and unlawfully refuse to obey the said order, and in defiance of said order and command did remain at said unlawful assembly, and did continue to conduct said show and theater and place of amusement and cause said unlawful assembly to continue, and, being so assembled and gathered together, the said Charles Dixon and said Guy Alexander and the said other persons did then and there unlawfully remain and continue in operating said show and theater, and did continue said unlawful assembly, thereby committing great grievances and a breach of the peace, and thereby disturbing and annoying the good and peaceable people in said city and for a great distance in said city and about the vicinity of said theater and show building, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

The facts are not in dispute and are sufficiently disclosed by the information. It was the theory of the people that respondent should be held guilty not only under section 5912, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 5261), which provides:

"No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, or be present at any dancing, or at any public diversion, show, or entertainment, or take part in any sport, game, or play on the first day of the week. The foregoing provisions shall not apply to works of necessity and charity, nor to the making of mutual prom-

ises of marriage, nor to the solemnization of marriages. And every person so offending shall be punished by fine not exceeding ten dollars for each offense"

—but likewise under section 11334, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14750), which reads as follows:

"If any persons, to the number of twelve or more, being armed with clubs, or other dangerous weapons, or if any persons, to the number of thirty or more, whether armed or not, shall be unlawfully, riotously, or tumultuously assembled in any city, township, or village, it shall be the duty of the mayor and each of the aldermen of such city, the supervisor of such township, the president and each of the trustees or members of the common council of such village, and of every justice of the peace, living in such city, township or village, and also of the sheriff of the county and his deputies, to go among the persons so assembled, or as near to them as may be with safety, and in the name of the people of this State, to command all the persons so assembled immediately and peaceably to disperse."

Assuming that the running of a moving picture show on Sunday is unlawful under section 5912, *supra,* which we do not determine (*People* v. *Finn,* 57 Misc. Rep. 659 [110 N. Y. Supp. 22]; *People* v. *Hemleb,* 127 App. Div. 356 [111 N. Y. Supp. 690]; *William Fox Amusement Co.* v. *McClellan,* 62 Misc. Rep. 100 [114 N. Y. Supp. 594]; *Edwards* v. *McClelland,* 118 N. Y. Supp. 181; *State* v. *Chamberlain,* 112 Minn. 52 [127 N. W. 444, 30 L. R. A. (N. S.) 335, 21 Am. & Eng. Ann. Cas. 679]; *State* v. *Penny,* 42 Mont. 118 [111 Pac. 727, 31 L. R. A. (N. S.) 1155]; and *Rex* v. *Charron,* 15 Can. Crim. Cas. 241), we are of opinion that the judgment in the case at bar must be reversed, in harmony with the reasoning of Justice HOOKER in *Yerkes* v. *Smith,* 157 Mich. 557 (122 N. W. 223). We there said:

"The playing of baseball on Sunday is an act prohibited and punishable by law; the penalty being a fine of $10. It does not amount to a misdemeanor and cannot be prosecuted by indictment; the only remedy being

a civil action. See 3 Comp. Laws, § 9797 *et seq.; Pettinger* v. *People,* 20 Mich. 336. The action sought to be enforced by this proceeding is primarily the prevention of a game of baseball, advertised for August 30th last, and of games that are said to have been contemplated on Sundays of later dates. We suppose that relator expects such games to be prevented by arrest of those engaged in them. The law has prescribed another method for preventing infractions of this law, viz., a penalty to be collected through judicial proceedings; and a summary arrest, even after a violation of the law, is not contemplated, and is not authorized by law, as a means of preventing the violation of this statute. 2 Comp. Laws, § 5912. See authorities above cited.

"We understand that counsel does not contend otherwise, and that he rests his right to a writ upon the claim that under 3 Comp. Laws, § 11334, and succeeding sections, a game of baseball played in the presence of 30 or more persons is *per se,* and necessarily, a breach of the peace, and an assemblage of persons to the number of 30 or more, for the purpose of playing and witnessing such a game in Detroit on Sunday, is such an 'unlawful, tumultuous, or riotous assemblage' as to make it the duty of this respondent to be present in person, or by policemen under his control, and prevent the game and the alleged consequent breach of the peace, by commanding said assemblage to immediately and peaceably disperse, enforcing such command by the arrest of all such persons as may fail to obey. Before the respondent could be required to arrest any one there must have been either a breach of the peace already committed or a failure to comply with a lawful order to disperse. Taking the answer as true, we must assume a willingness on the part of this respondent to cause warrants to issue for the arrest of all persons violating section 5912, and, acting through his subordinates, summarily to arrest all persons who should be guilty of a breach of the peace, but that he refused to assume that all baseball games played on Sunday required his personal attendance or would justify a command by him to disperse and subsequent arrest under the statute cited, if such command should not be obeyed.

"We have said that the mere playing of a game of baseball upon Sunday is not of itself and necessarily a breach of the peace, justifying arrest and indictment. In a sense, a game of baseball on Sunday may often be a breach of the peace, perhaps usually is, but it cannot be said that it is necessarily so, and before a summary arrest can be made for a breach of the peace, not only must overt acts be committed in the presence of the officer, but they must be violent and dangerous acts of some sort.    *    *    *

"It is clear that a mere assembling of persons to play and witness any Sunday game is not sufficient, without overt acts of violence or disorder, to authorize an officer to make a summary arrest. This being so, relator's claims must be left to rest upon the statute (section 11334) which has been held to be applicable, where a game of baseball on Sunday in a public place was attended by several hundred assembled, unlawfully and tumultuously, to witness it. *Scougale* v. *Sweet,* 124 Mich. 315 (82 N. W. 1061). Before an arrest can be required under this statute, there must be:

"(1) A condition of things justifying a command to disperse by the proper officer designated by law.

"(2) Disobedience of the command.

"This statute is apparently based upon the common-law duty of sheriffs and others to read the riot act and command a dispersal of persons at a time of riot. This statute may perhaps be said to have enlarged the common-law rule. It has certainly made it an offense to disobey a lawful command. But before one can be convicted of such an offense, there must have been:

"(1) An occasion for such a command;

"(2) the command must have been made by one of the statutory officers;

"(3) the command must have been disobeyed."

While the foregoing statement was not necessary to the decision in the case there considered, we are of opinion that it correctly states the law applicable to the instant case, and that the remedy against the respondent, in the absence of any overt acts of violence or disorder, must be confined to that provided under section 5912, 2 Comp. Laws.

The judgment is reversed, and the respondents are discharged.

KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.

The late Justice MCALVAY took no part in this decision.