YERKES v. SMITH.

1. CRIMINAL LAW—SUNDAY BASEBALL.
    Although the playing of baseball on Sunday is prohibited by 2
    Comp. Laws, § 5912, it does not constitute a misdemeanor
    and cannot be prosecuted by indictment, but the statute must
    be enforced in a civil action for the penalty.

2. SAME.
    Before an arrest for breach of the peace is justified, overt acts
    of a dangerous and violent character must be committed in
    the presence of the officer.

3. MANDAMUS—ENFORCEMENT OF CRIMINAL LAW.
    The writ of mandamus will not issue to compel the police com-
    missioner of the city of Detroit to enforce 3 Comp. Laws, §
    11334, which provides for the dispersal of persons assembling
    unlawfully, riotously, or tumultuously, by dispersing an as-
    semblage at a Sunday baseball game; since the police com-
    missioner is not one of the officers designated by the statute.

Certiorari to Wayne; Brooke, Hosmer, Rohnert, and
Donovan, JJ.  Submitted November 10, 1908.  (Calen-
dar No. 23,076.)  Decided July 15, 1909.

Mandamus by George B. Yerkes, prosecuting attorney
of Wayne county, to compel Fred W. Smith, police com-
missioner of the city of Detroit, to enforce the law against
the playing of baseball on Sunday.  An order denying the
writ is reviewed by relator on writ of certiorari.  Affirmed.

*James H. Pound*, for relator.

*George P. Codd* (*Michael P. Bourke*, of counsel), for
respondent.

HOOKER, J.  The petition for certiorari in this cause
shows that this proceeding is a continuation of an effort
by certain clergymen, and perhaps others, to stop the

playing of baseball upon Sunday in Detroit. The matter was before us in the case of *Sweet* v. *Smith*, 153 Mich. 674 (117 N. W. 59), upon a writ of certiorari to review the denial by the circuit court of a writ of mandamus to compel this same respondent " to *execute and enforce all laws pertaining to the preservation of the Sabbath,* · * * * at the baseball park of the Detroit Club "—*i. e.*, the Detroit Baseball Club.

We held in that case that the grievance complained of was purely a public grievance, and relief would not be granted at the instance of a private relator. Said petition shows that, failing in the former proceeding, the same persons have applied to the prosecuting attorney, who signed the petition for mandamus in this case, and afterwards the petition for certiorari hereinbefore mentioned. The cause is presented here by private counsel, relator's active connection with the case apparently extending no further than to lend his name to persons seeking to compel respondent to enforce the Sunday laws by summary measures, although, if the claim in this cause is sound, respondent was liable to prosecution for a misdemeanor and punishment to the extent of $300. 3 Comp. Laws, § 11337. The writ was denied in the circuit court—four judges sitting—and is before us by writ of certiorari.

The playing of baseball on Sunday is an act prohibited and punishable by law, the penalty being a fine of $10. It does not amount to a misdemeanor, and cannot be prosecuted by indictment, the only remedy being a civil action. See 3 Comp. Laws, § 9797 *et seq.; Pettinger* v. *People*, 20 Mich. 336. The action sought to be enforced by this proceeding is primarily the prevention of a game of baseball, advertised for August 30th last, and of games that are said to have been contemplated on Sundays of later dates. We suppose that relator expects such games to be prevented by arrest of those engaged in them. The law has prescribed another method for preventing infractions of this law, viz., a penalty to be collected through judicial proceedings; and a summary arrest, even after a

violation of the law, is not contemplated, and is not au-
thorized by law, as a means of preventing the violation of
this statute. 2 Comp. Laws, § 5912.   See authorities
above cited.

We understand that counsel does not contend other-
wise, and that he rests his right to a writ upon the claim
that under 3 Comp. Laws, § 11334, and succeeding sec-
tions, a game of baseball played in the presence of 30 or
more persons is *per se*, and necessarily, a breach of the
peace, and an assemblage of persons to the number of 30
or more, for the purpose of playing and witnessing such a
game in Detroit on Sunday, is such an "unlawful, tumul-
tuous or riotous assemblage" as to make it the duty of
this respondent to be present in person, or by policemen
under his control, and prevent the game and the alleged
consequent breach of the peace, by commanding said
assemblage to immediately and peaceably disperse, en-
forcing such command by the arrest of all such persons as
may fail to obey.   Before the respondent could be re-
quired to arrest anyone, there must have been either a
breach of the peace already committed, or a failure to
comply with a lawful order to disperse.   Taking the an-
swer as true, we must assume a willingness on the part
of this respondent to cause warrants to issue for the arrest
of all persons violating section 5912, and, acting through
his subordinates, summarily to arrest all persons who
should be guilty of a breach of the peace, but that he re-
fused to assume that all baseball games played on Sun-
day required his personal attendance or would justify a
command by him to disperse, and subsequent arrest under
the statute cited, if such command should not be obeyed.

We have said that the mere playing of a game of base-
ball upon Sunday is not of itself and necessarily a breach
of the peace, justifying arrest and indictment.] In a sense,
a game of baseball on Sunday may often be a breach of
the peace, perhaps usually is, but it cannot be said that it
is necessarily so, and before a summary arrest can be
made for a breach of the peace, not only must overt acts

be committed in the presence of the officer, but they must be violent and dangerous acts of some sort.

The constitutional immunity from arrest is discussed by the late Mr. Justice Campbell in *Robison* v. *Miner*, 68 Mich. 557 (37 N. W. 25).

"So far as arrests are concerned, a similar principle applies. Under our system we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that no arrest can be made without warrant except in cases of felony, or in cases of breaches of the peace committed in the presence of the arresting officer. This exception, in cases of breaches of the peace, has only been allowed by reason of the immediate danger to the safety of the community against crimes of violence, and it was confined, even in such cases, to instances where the violence was committed in the presence of the officer. There are not many such cases. The common and statute law provide for very few specified breaches of the peace, and there are none that are not specified. An indictment charging a person as a peacebreaker, and not with any specified crime, would be good for nothing. Assaults and riotous conduct make up the largest part of the list. But there can be no breach of the peace within the meaning of the law that does not embrace some sort of violent as well as dangerous conduct. The manifest purpose of this statute is to bring certain things that are not breaches of the peace within that denomination to avoid the necessity of a warrant. But, as already suggested, the Constitution cannot be so evaded."

See, also, *Quinn* v. *Heisel*, 40 Mich. 576. It is clear that a mere assembling of persons to play and witness any Sunday game is not sufficient, without overt acts of violence or disorder, to authorize an officer to make a summary arrest.

This being so, relator's claims must be left to rest upon the statute—section 11334—which has been held to be applicable, where a game of baseball on Sunday in a public place was attended by several hundred assembled, unlawfully and tumultuously, to witness it. *Scougale* v. *Sweet*, 124 Mich. 315 (82 N. W. 1061). Before an arrest can be required under this statute, there must be:

(1) A condition of things justifying a command to disperse, by the proper officer, designated by law.

(2) Disobedience of the command.

This statute is apparently based upon the common-law duty of sheriffs and others to read the riot act, and command a dispersal of persons at a time of riot.

The statute may perhaps be said to have enlarged the common-law rule. It has certainly made it an offense to disobey a lawful command. But before one can be convicted of such an offense, there must have been:

(1) An occasion for such a command.

(2) The command must have been made by one of the statutory officers.

(3) The command must have been disobeyed.

It is sufficient to say in the present case that respondent is not one of the officers named in the statute, who are required to command a dispersal. It follows that he should not be compelled to take such action by a writ of mandamus.

In this disposition of the case before us, it is not intended to imply that the writ of mandamus may properly issue in similar cases. No opinion is expressed upon that or any other of the many questions that naturally suggest themselves in the case.

The order of the circuit court is affirmed.

Montgomery and Ostrander, JJ., concurred with Hooker, J. Blair, C. J., and Moore and McAlvay, JJ., concurred in the result. Grant, and Brooke, JJ., took no part in the decision.