PEOPLE'S APPLIANCE, INC., *v.* CITY OF FLINT.

1. MUNICIPAL CORPORATIONS — ORDINANCES — SUNDAY — CLASSIFICA-
   TION.
   A governing body of a municipality, clothed with power to enact
   and enforce ordinances for the observance of the Sabbath, is
   vested with discretion in determining the kinds of pursuits, oc-
   cupations, or businesses to be included or excluded, and its
   determination will not be interfered with by the courts pro-
   vided the classification and discrimination made are founded
   upon reasonable distinctions and have some reasonable relation
   to the public peace, welfare, and safety.

2. SAME—ORDINANCES—CLASSIFICATION—DISCRIMINATION.
   Legislative bodies of municipalities may distinguish, select, and
   classify objects of legislation, a classification being sufficient
   if it is practical, and while there may be discrimination as
   between classes and different regulations for different classes
   without invalidating the legislation, the ordinance must affect
   all persons similarly situated or engaged in the same business
   without discrimination.

3. SAME—CONSTITUTIONAL LAW—CLASS LEGISLATION.
   An ordinance of a home-rule city which requires that furniture
   and household appliance stores be closed on the Sabbath is
   not objectionable under the Constitution as class legislation
   because other places of business were not included, since, in
   the absence of evidence to the contrary, it must be assumed
   that the city commission acted upon facts within its possession
   which justified the classification as reasonable and proper.

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 50 Am Jur, Sundays and Holidays § 6.
[1, 2, 3, 4, 13] 50 Am Jur, Sundays and Holidays § 11.
[4, 14] 50 Am Jur, Sundays and Holidays § 14.
[5, 6] 50 Am Jur, Sundays and Holidays § 9.
[7] 50 Am Jur, Sundays and Holidays § 7.
[8] 11 Am Jur, Constitutional Law § 267.
[9, 12] 11 Am Jur, Constitutional Law § 133.
[10] 37 Am Jur, Municipal Corporations § 155 *et seq.*
[11] 37 Am Jur, Municipal Corporations §§ 158, 159.

4. Same—Class Legislation.

Class legislation by a municipality which denies rights to one member of a class which are accorded to other members of the same class, or which inflicts upon one individual a more severe penalty than is imposed upon another in like case offending is invalid.

5. Same—Ordinances—Sunday—Police Power.

The enactment of an ordinance by a home-rule city requiring that furniture stores not conduct business on the Sabbath is a valid exercise of the police power, rest being essential to public health.

6. Sunday—Police Power—Health.

The exercise of police power by prohibition of secular pursuits on the Sabbath is justified as a sanitary measure, as experience has demonstrated that one day's rest is requisite for the health of most individuals whether or not they have the power to observe a day of rest of their own volition.

7. Municipal Corporations—Sunday.

Home-rule cities are authorized to require business places to be closed on the Sabbath, it being a sanitary measure not in conflict with the general laws of the State (CL 1948, § 117.1 *et seq.*).

8. Constitutional Law—All Rights Subject to Police Power.

The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community.

9. Same—Presumption is That Ordinance is Constitutional.

Since all presumptions are that an ordinance was regularly enacted in full compliance with all provisions for its adoption and is in conformity with all constitutional requirements, to hold it void the repugnancy must clearly appear, and in case of doubt the courts will not interfere.

10. Same—Regulation of Occupations Valid if Within Police Power.

Regulation of lawful trades, occupations, and business activities is within the exercise of the police power by the legislative body, and unless an ordinance of the body is affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as to needlessly invade property or personal rights as protected by the Constitution, it must be held valid.

11. SAME—ORDINANCES—CLASSIFICATION—VALIDITY.

An ordinance does not violate the equal protection clause merely because it is not all-embracing and does not cover the whole field of possible abuses, and because other instances may be suggested to which it might have been applied, and it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of legislative judgment and discretion.

12. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—PRESUMPTIONS.

An ordinance of a home-rule city is presumed to be constitutional.

13. SAME—ORDINANCE—SUNDAY—LOCAL ACT.

An ordinance making it unlawful for household furniture and appliance dealers to keep open a store on the Sabbath within the city, which is made to operate alike on all members of the class without discrimination *held*, not unreasonable and discriminatory nor a local act.

14. SAME—ORDINANCES—SUNDAY—STATUTES.

Home-rule city ordinance which permits imposition of $300 fine or sentence of imprisonment or both upon household furniture and appliance dealers who keep stores open on the Sabbath *held*, not invalid because such penalty is greater than that permitted in State statute limiting imposition of penalty to a $10 fine, since the statute is not a criminal statute (CL 1948, § 435.1).

15. CONSTITUTIONAL LAW—ORDINANCES—COURTS.

It is not the judicial function to determine the wisdom or lack of wisdom of city council in adopting ordinances, but the court may only determine whether the ordinance is constitutional.

BLACK, EDWARDS, and VOELKER, JJ., dissenting.

Appeal from Genesee; Elliott (Philip), J. Submitted April 15, 1959. (Docket No. 57, Calendar No. 47,126.) Decided November 24, 1959.

Bill by People's Appliance & Furniture, Inc., a Michigan corporation, against the City of Flint, a municipal corporation, its city manager and police department, to declare void and restrain enforcement of an ordinance prohibiting certain business on Sunday. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Weiss & Damm,* for plaintiff.

*William J. Kane, Don W. Mayfield* and *Wade D. Withey,* for defendants.

Kavanagh, J.   Plaintiff is a Michigan corporation engaged in the business of the sale and storage of furniture and household appliances in the city of Flint, Michigan.

On March 21, 1955, the city of Flint adopted an ordinance which provided:

"Sec. 1. It shall be unlawful for any person, firm or corporation or anyone acting in behalf of any person, firm or corporation whether owner, proprietor, agent or employee, in the city of Flint, to conduct or engage in the business of selling, renting, leasing or exchanging furniture, including but not limited to televisions and radios, and/or household appliances, or to keep open any store, office or other place for the purpose of selling, renting, leasing or exchanging thereof, on the first day of the week commonly called Sunday:   Provided, That the foregoing provisions shall not apply to works of necessity and charity, and provided further, that the provisions contained herein shall not be applicable to any persons [sic?] who conscientiously believes that the seventh day of the week should be observed as the Sabbath and actually refrains from such secular business and/or labor on that day.

"Sec. 2. Any person, firm or corporation or anyone acting in behalf of any person, firm or corporation violating any of the provisions of this ordinance shall upon conviction thereof be subject to a fine of not more than $300 or to imprisonment in the city jail for a period of not more than 90 days, or both such fine and imprisonment in the discretion of the court.

"Sec. 3. Should any provision, sentence, clause or phrase of this ordinance be held to be invalid for any reason, such holding shall not affect the validity

of the ordinance as a whole or any part thereof other than the part so declared invalid, it being the legislative intent that this ordinance shall stand notwithstanding such holding.

"Sec. 4. All ordinances or parts of ordinances, in conflict herewith are hereby repealed."

Plaintiff filed a bill of complaint in Genesee county circuit court seeking an injunction restraining the city of Flint, the city manager, the police department, their agents, servants and employees from prosecuting any suits or criminal proceedings under the ordinance.

It was the claim of plaintiff that the city of Flint had no right or power to prohibit the sale of furniture on Sunday, and that said ordinance is wholly void; that the city commission in adopting said ordinance acted arbitrarily and unreasonably and in contravention of the rights of plaintiff as set forth in the Constitution of the State of Michigan (1908), art 2, §§ 1, 16,* and in the 14th amendment of the Constitution of the United States of America; that the said ordinance unjustly discriminates against plaintiff and other persons and corporations in the same business; that the classification attempted to be made by said ordinance is unreasonable, arbitrary and void and bears no reasonable relationship to any object or purpose which might possibly have been sought or attempted to be accomplished by said ordinance; that there are no sanitary problems involved in the furniture business and no reason for police regulation of it.

The city of Flint appeared specially and made a motion to dismiss the bill of complaint claiming the bill stated no cause of action. It was subsequently

---

* Sec. 1. "All political power is inherent in the people. Government is instituted for their equal benefit, security and protection."

Sec. 16. "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

stipulated that the bill of complaint be amended to plead article 5, § 30, of the Constitution of the State of Michigan (1908).*

The court in a written opinion, in which he entered into a lengthy discussion of the constitutional questions involved, came to the conclusion that the ordinance was unconstitutional in that the ordinance bore no reasonable relation between the remedy adopted and the public purpose. He held that the inclusion of furniture stores in this ordinance had no rational relation to promoting the health of the community, and unlike the former Michigan cases, evidence was introduced in this case to show discrimination between different types of businesses. The opinion authorized the entry of a decree, which was subsequently entered on January 3, 1958, holding that the ordinance and all amendments thereof were null and void. The decree also restrained the enforcement of said ordinance.

At the hearing on the motion to dismiss, plaintiff swore a witness, Mannie Colish, who testified that he was the president and a stockholder of People's Appliance & Furniture, Inc., and that it had been his policy to keep the furniture store open 7 days a week, including Sunday. He further testified that a large number of other businesses were being operated in the city of Flint on Sunday, including gasoline stations, beer gardens, restaurants, dairy bars, bowling alleys, golf courses, grocery stores, construction businesses, hardware stores, clothing stores, model homes, flower shops, and others; that he had closed his business on Sunday and suffered a loss from

---

* Sec. 30. "The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act, excepting acts repealing local or special acts in effect January one, nineteen hundred nine and receiving a two-thirds vote of the legislature shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

20 to 25% over the week's volume; that when he closed his business on Saturday and remained open on Sunday he suffered approximately a 10% loss in gross volume.

Following the testimony of Mr. Colish, it was stipulated that at least 7 hardware and sporting goods stores were open in the city of Flint both on Saturday and Sunday, 7 days a week.

Defendants appeal to this Court. There appears to be only 1 question involved: Was the trial court correct in holding the ordinance void because of arbitrary and discriminatory classification?

This is not a new question in Michigan or the other States of the nation. A large volume of cases have found their way into the appellate courts of the several States and the United States supreme court attacking Sunday ordinances on exactly the same reason as was given in the instant case. Always the court has before it the question of determining whether or not the prohibition against a particular business is reasonable and whether it includes all in a particular class. It would be of little benefit to the bench and bar of this State to engage in a long historical discussion of the reasons for the law and the different conclusions reached in the several States. Suffice it to say that from all of these cases there is a general pattern developed from which certain rules can be deducted:

1. It is generally conceded (as it is by plaintiff here) that a governing body of a municipality, clothed with power to enact and enforce ordinances for the observance of Sunday, is vested with discretion in determining the kinds of pursuits, occupations, or businesses to be included or excluded, and its determination will not be interfered with by the courts provided the classification and discrimination made are founded upon reasonable dis-

tinctions and have some reasonable relation to the public peace, welfare, and safety.

2. It has been generally held that legislative bodies may distinguish, select, and classify objects of legislation. It suffices if the classification is practical. They may prescribe different regulations for different classes, and discrimination as between classes is not such as to invalidate the legislative enactment. The one requirement is that the ordinance must affect all persons similarly situated or engaged in the same business without discrimination.

This Court has passed specifically on this question. *People* v. *Krotkiewicz,* 286 Mich 644. Defendant Krotkiewicz was convicted in justice court in the city of Hamtranck on the charge of selling groceries and meats on Sunday in violation of an ordinance almost identical with the ordinance of the city of Flint. Justice McALLISTER, quoting from *People* v. *DeRose,* 230 Mich 180, 184, said (pp 646, 647):

" 'It was made to operate alike on all members of a particular class who kept their places of business open on Sunday. Why it was not made to apply to other classes in like manner offending we have no means of knowing. In the absence of clear evidence to the contrary, we should assume that the city council acted upon facts within its possession, which justified the classification as reasonable and proper.' "

Justice McALLISTER went on to say (p 648):

"The fact that the ordinance prohibits the sale of certain commodities does not constitute class legislation if it applies with equal force to all situated in a like business. We must assume that the city council acted upon facts within its possession which justified the classification as reasonable and proper."

In the case of *People* v. *DeRose,* 230 Mich 180, dealing with a similar ordinance prohibiting the operation of a grocery store on Sunday, Justice Mc-Donald, speaking for the Court on the subject of class legislation, said (p 184):

"It is contended by counsel for the defendant that this ordinance is class legislation because it does not operate on all citizens who keep their places of business open on Sunday; that in permitting drug stores, tobacco shops and other places to remain open on Sunday, while forbidding the same right to the defendant, it denies to him his constitutional right to the equal protection of the laws. We do not think the ordinance is open to this objection. It was made to operate alike on all members of a particular class who kept their places of business open on Sunday. Why it was not made to apply to other classes in like manner offending we have no means of knowing. In the absence of clear evidence to the contrary, we should assume that the city council acted upon facts within its possession, which justified the classification as reasonable and proper."

In the case of *People* v. *Bellet,* 99 Mich 151 (22 LRA 696, 41 Am St Rep 589), Justice Montgomery, speaking for the Court with reference to an appeal from a conviction of a city ordinance for keeping a barber shop open on Sunday, in answer to the question of class legislation, said (p 153):

"By class legislation, we understand such legislation as denies rights to one which are accorded to others, or inflicts upon one individual a more severe penalty than is imposed upon another *in like case* offending."

Justice Montgomery then quoted from Cooley on Constitutional Limitations (p 390; 6th ed p 479–481) as follows (pp 153, 154):

" 'Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application. They may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers or traders, and the like. * * * The legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinctions in the rights, obligations, duties, and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit; and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge.' "

Subsequently, Justice Montgomery said (pp 155, 156):

"The better reason for maintaining the police power to prohibit citizens from engaging in secular pursuits on Sunday is the necessity of such regulation as a sanitary measure. As to those employments which are noiseless, and harmless in themselves, and conducted in a manner not calculated to offend those who, from religious scruples, observe Sunday as the Lord's day, this necessity appears to be the only valid source of legislative power; and this is based upon the fact that experience has demonstrated that one day's rest is requisite for the health of most individuals, and not all individuals possess the power to observe a day of rest of their own volition. As is well said by Mr. Tiedeman:

" 'If the law did not interfere, the feverish, intense desire to acquire wealth, so thoroughly a characteristic of the American nation, inciting a relentless rivalry and competition, would ultimately prevent, not only the wage-earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature, and obeying the instinct of self-preservation, by resting periodically from labor, even if the mad pursuit of wealth should not warp their judgment and destroy this instinct. Remove the prohibition of law, and this wholesome sanitary regulation would cease to be observed.' Tiedeman, Limitations of Police Power, 181."

Similarly, in the case of *Irishman's Lot, Inc.,* v. *Secretary of State,* 338 Mich 662, this Court upheld a Sunday ordinance, in an opinion written by Justice SHARPE, preventing the sale of used cars on Sunday in certain counties of the State.

Justice REID, writing in *In re Berman,* 344 Mich 598, had before him the same question involving an identical ordinance as the instant case in the city of Detroit. In discussing the question of whether it is beyond the police power of a city to enact such an ordinance, Justice REID said historically, the Sabbath day has been known as a day of rest, and rest is essential to public health. Justice REID quoted from *People* v. *Bellet, supra,* 156, as follows (p 603) :

" 'Experience has demonstrated that one day's rest is requisite for the health of most individuals, and not all individuals possess the power to observe a day of rest of their own volition.' "

It was held that the enactment of the ordinance was a valid exercise of the police power. Justice REID further said (p 603) :

"Under the home-rule act, cities are authorized to require business places to be closed on Sunday, it being a sanitary measure not in conflict with the general laws of the State."

This Court in *Kelly* v. *Judge of Recorder's Court of Detroit,* 239 Mich 204, 214, 215 (53 ALR 273), said:

" 'The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.' *Crowley* v. *Christensen,* 137 US 86, 89 (11 S Ct 13, 34 L ed 620). See, also, *Gundling* v. *City of Chicago,* 177 US 183 (20 S Ct 633, 44 L ed 725).

"All presumptions are that this law was regularly enacted in full compliance with all provisions for its adoption and is in conformity with all constitutional requirements. To hold it void the repugnancy must clearly appear. In case of doubt courts will not interfere to declare a regularly enacted statute unconstitutional.

"Regulation of certain lawful trades, occupations, and business activities is a question for the legislature. Its determination comes within the proper exercise of the police power of the State unless affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as to needlessly invade property or personal rights as protected by the Constitution.

" 'A statute does not violate the equal protection clause merely because it is not all-embracing. * * * A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. * * * The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. * * * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judg-

ment and discretion;' citing numerous cases throughout the quotation. *Whitney* v. *California,* 274 US 357, 370 (47 S Ct 641, 71 L ed 1095)."

This Court, under the authorities above cited, cannot speculate as to why the legislative body did not include in its Sunday closing law other retail businesses. Perhaps it was because they were having difficulty only with the furniture stores; perhaps there were other valid reasons why other businesses were allowed to remain open on Sunday in the city of Flint. The constitutionality of such an ordinance is presumed. No proof was offered from which we could reasonably infer that the ordinance was unreasonable and discriminatory because of arbitrary classification. We have considered the question of whether or not it is local legislation. We do not agree that it is. It covers all merchants selling furniture and household appliances in the city of Flint. This covers a complete class. It is made to operate alike to all members of that class without discrimination. Therefore it does not violate article 5, § 30, of the Constitution of the State of Michigan (1908) as a local act.

Since writing the above, we have had the benefit of Justice Voelker's opinion. He indicates that he finds the ordinance bad for several reasons and then proceeds to outline 4 in particular. He admits that the numerical weight of authority seems to be plainly against his view "that the present Flint ordinance is unreasonably discriminatory and void—when judged, that is, without reference to any existing State statute." He refers to what he believes to be confusion in our law with reference to Sunday ordinances.

It would appear to be admitted that no confusion exists in the settled case law of this State or the other States of the Union.

The first portion of this opinion, we think, adequately answers all of the questions raised, excepting the one with reference to the State statute which this ordinance is alleged to be violating.

The State statute provides:

"No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, or be present at any dancing, or at any public diversion, show, or entertainment, or take part in any sport, game, or play on the first day of the week:   The foregoing provisions shall not apply to works of necessity and charity nor to the making of mutual promises of marriage nor the solemnization of marriages.   And every person so offending shall be punished by fine not exceeding 10 dollars for each offense."   (CL 1948, § 435.1 [Stat Ann 1957 Rev § 18.851]).

The city ordinance in question is directed against any person, firm or corporation whether owner, proprietor, agent or employee, from conducting or engaging in the business of selling, renting, leasing or exchanging furniture.   Only a portion of the people included in the State statute are involved in this ordinance. Clearly this limited ordinance cannot be in conflict with the broad State statute.   The local municipality does not attempt to include more people than the State statute, but rather only a portion of those people covered by the State act.   The only conflict in the 2 that could possibly be claimed would be the penalty provision, the State statute providing for a fine not exceeding $10 for each offense; the ordinance, a fine of not more than $300 or imprisonment in the city jail for a period of not more than 90 days, or both such fine and imprisonment in the discretion of the court.   Confusion should not result from this, since it has been clearly established that the Sunday statute referred to is not a criminal statute.

*Yerkes* v. *Smith,* 157 Mich 557, *People* v. *Dixon,* 188 Mich 307 (Ann Cas 1918B, 385) and *Crawford* v. *Huber,* 215 Mich 564 (39 ALR 1392), are authority for the position that the Sunday statutes are not criminal in nature but civil and the penalties provided can only be recovered in civil actions. It is for this very reason that all of the Michigan cases have failed to make any reference to this statute when dealing with criminal ordinances adopted by local municipalities under the police power. Only *Builders Association* v. *City of Detroit,* 295 Mich 272, makes any reference to the Sunday civil statute and admittedly the case does not turn on this point.

Since all of the 4 points raised by our Brother overlap to such an extent that basically his arguments are directed to the claim of conflict with the State statute, we do not feel that any further answer is necessary, except to say it is not the judicial function to determine the wisdom or lack of wisdom in adopting certain ordinances. This is for the legislative authority. The judicial function lends itself only to determine whether an act is constitutional. Reference is made to the body of the forepart of this opinion for a statement with reference to the presumption of constitutionality and the reasons why it is felt this ordinance is constitutional.

The decree of the lower court will be reversed. Decree dismissing the bill may be entered in that court in accordance with this opinion, with costs in favor of defendants.

DETHMERS, C. J., and CARR, KELLY, and SMITH, JJ., concurred with KAVANAGH, J.

VOELKER, J. *(dissenting).* I find this ordinance bad for so many reasons that I scarcely know where to begin. I think this ordinance is bad for at least 4 reasons: (1), that it is unreasonably discrim-

inatory, irrespective of any possible State statute on the subject; (2) that it is unreasonably discriminatory, because of and with particular reference to an existing and controlling State statute on the subject; (3) that it is invalid because it fatally contravenes and conflicts with an existing State statute covering the same subject; and (4) that it is bad and void because the penalty prescribed is unreasonable and excessive. I find that some of the discussion under the various points above outlined must occasionally overlap. I take up the first ground of invalidity.

There is a recent (1958) 30-page annotation in 57 ALR2d 975 on the subject of the validity or invalidity of Sunday statutes and ordinances because of possible unreasonable discrimination. Since it cites a number of similar and related ALR notes I need not here repeat them. I there gather that the numerical weight of authority seems plainly to be against my view that the present Flint ordinance is unreasonably discriminatory and void—when judged, that is, without reference to any existing State statute. I also glean from the annotation and the numerous cases I have read, there and elsewhere, that there exists a curious and rather widespread judicial reticence when our courts are dealing with so-called Sunday ordinances. The judicial approach then often seems to become gingerly to the point of timidity, as though the fact that, however invalid such ordinances may be when judged by ordinary standards, after all most Sunday ordinances are plainly on the side of morality and all right-thinking people and, if they should err, they do so on the side of the angels. If such a tendency exists (and we trust we are wrong), we can only observe that an unreasonably discriminatory or otherwise invalid ordinance is no less bad because it happens also to please the pious. It is bad enough that Sunday or-

dinances should ever unreasonably discriminate between our people; it is doubly bad should there ever be any hint of judicial discrimination in their interpretation as against the accepted rules of interpretation applying to ordinary ordinances. Yet this apparent double standard is particularly evident in Michigan, as I shall presently undertake to demonstrate. One had not heretofore been sufficiently aware of the fact that in Michigan there are evidently Sunday standards for judging Sunday ordinances. I am now aware and I do not like what I see.

One of the common difficulties in considering discriminatory legislation is that the question of whether a statute or ordinance is unreasonably discriminatory and therefore void is one which can seldom be determined empirically. One is rarely able to prove his point conclusively. (I repeat: I am now discussing this ordinance without reference to any possible existing State statutes.) Nevertheless I submit that this ordinance is unreasonably discriminatory on its face. In fact I think it fairly oozes unfair and undemocratic discrimination. To put it bluntly I regard it as a particularly offensive example of provincial, petulant, peremptory, paternalistic and totally bad local legislation. I proceed to give my reasons.

To imply, as my Brother does, that this ordinance should be held valid because it treats all furniture dealers alike is to adopt and pervert into a test of *validity* that which began originally as a basic test of *invalidity*. Thus applied it is properly no test at all, but mere empty rhetoric, and becomes tantamount to our judicially telling our municipalities that they may by ordinance discriminate all they like so long as they do not also further discriminate among the selected victims already being blandly discriminated against. Put another way this is to

say that discriminatory local legislation becomes valid provided only that the discrimination is sweeping enough, that the wider the discrimination the better the ordinance. Such a "test" thus becomes as pliable and accommodating as a wax nose—it can be twisted any which way.

What the test originally meant, to give a crude example, is that any ordinance which attempted, say, to close on Sundays or otherwise regulate all furniture stores run by nonresidents, Presbyterians or those with blue eyes would *on that ground alone* be palpably discriminatory and void. And so indeed it would be, because the ordinance would then plainly have failed to pass the basic elementary test of validity, namely, to treat alike all those sought to be affected by the questioned ordinance. Manifestly there would be no occasion for a court to proceed further to determine whether the particular group sought to be affected was in turn being unreasonably discriminated against. Yet in our Sunday ordinance cases in Michigan we have consistently overlooked the fact that once an ordinance survives that basic judicial test (as this one has) all that a court has decided up to that point is that the ordinance is not invalid for *that* reason. The big question of possible unreasonable discrimination between those affected and those not affected by the questioned ordinance still remains to be grappled with. Instead we have ignored it, slaying the remaining crucial question with a resounding platitude long become empty of all meaning. Lo, the test of evil has become the test of virtue. (The judicial error covered by this last point has unfortunately not been confined solely to local Sunday legislation.) One cannot judge discrimination in a vacuum; to test the attempted classification there must be some basis of comparison lying outside the affected group; and the vital thing we have forgotten is that to determine intelligently the

validity and reasonableness of the classification we must compare those sought to be affected by the ordinance with those unaffected. Thus properly tested this ordinance cannot possibly survive.

The "test" my Brother would adopt has had a curious history. Like legislators the world over, local legislators possess an observable and perhaps natural tendency to want to legislate. And they have done so, judging from our past cases, passing ordinances on nearly every conceivable subject, some of which have been far more notable for their imaginative qualities than for any concern with legality or fair play. In the earlier days of our State apparently one of the favorite pastimes of many local legislators was to enact ordinances patriotically attempting to favor the home folks over outsiders. This type of legislation took many forms. Many were nearly as extravagant as the hypothetical example given above. Almost invariably these attempts were swiftly struck down by our Court on the obvious and simple ground that the local ordinance or whatever had failed to treat alike those sought to be affected. We usually said nothing more because there was no more to say. The ordinance had failed to pass the basic test of validity; it was therefore held bad and abruptly declared so; and the justice to whom the case was assigned presumably congratulated himself for drawing such an easy case to write. There was no occasion to flail a dead horse and go on to consider the prickly questions of whether the ordinance was further discriminatory or invalid on still other grounds. A typical case of this kind is *City of Saginaw* v. *Saginaw Circuit Judge,* 106 Mich 32, where the offending local legislation sought to exclude local storekeepers from an ordinance regulating hawking and peddling. We promptly struck it down. There are many others. The test, then, is

all right as far as it goes; we have simply made it carry too much weight.

My Brother would sustain this ordinance as a reasonable exercise of the police power, largely as a health measure. In his opinion he also implies that it is never any concern of ours what may have motivated the local legislators, and that in the absence of evidence to the contrary (here the plaintiff showed many other enterprises in Flint which continued to run merrily on Sunday) we must presume that they acted reasonably and upon sufficient evidence that the furniture people of Flint possess peculiar health and sanitation problems from which they and the community must be rescued. One is touched by such tender concern for the victims. Judges must to some extent lead cloistered lives, granted, but their lives are not that cloistered. Just to state such a proposition should be to put it out of court; under such a test and such a presumption those unreasonably discriminated against simply cannot ever win.* I think that all the evidence to the contrary we need is our own senses. If this ordinance were dealing with miners, sand hoggers, sandblasters or professional divers, or those engaged in similar occupations obviously hazardous to safety or health, there might at least be some arguable reason for indulging such an assumption. But for a court solemnly to apply such reasoning to those placid white-collar people who merely sell furniture is resolutely to shut one's eyes to the common facts of life, known to judges and laymen alike, and to indulge in a form of judicial somnambulism. What I am criticizing here is not my Brother, I hasten to add, but the unrealistic state of our case law which obviously made him feel compelled to write as he has.

---

* As thus applied, this "test" and presumption together add up to a sort of totally unassailable Michigan Doctrine of Aldermanic Infallibility.

We intend no irreverence when we suggest that under the elastic logic of such a presumption, stretched to its logical extreme, we would as well be obliged to sustain a local ordinance seeking to close all churches and banish all church services on Sundays, ostensibly for the sake of the health of the sagging pastors and that of their equally exhausted parishioners. That such an ordinance would doubtless promptly be held invalid for the present or still other sufficient reasons does not invalidate my point. Unless judges (who presumably never toil on Sunday) are to dwell in fleecy clouds, we must reject such dreary fictions and boldly take judicial notice of the obvious fact that furniture dealers as a class present no greater health concern and, indeed, quite probably a much lesser one, than many of those classes of commerce and trade which were by their omission exempted from this ordinance.

As was said in a somewhat different context in *Gronlund* v. *Salt Lake City* (1948), 113 Utah 284, 293 (194 P2d 464), referred to in 57 ALR2d 975, 998: "The classification being on a commodity basis, it is arbitrary to permit the sale of a can of beer on Sunday and prohibit the sale of a can of orange juice or a can of coffee." We think it is equally arbitrary impliedly to allow the sale of tools and workshop appliances to the head of the household on Sunday but not the sale of furniture or household appliances to his wife; or again to allow the sale of a lounging robe to the fatigued husband on a Sunday but not the sale of a chair in which he may take his rest. This is discrimination grown so bold and naked that it has evidently totally escaped us, like the emperor's new suit in the old fairy tale.

For a court to indulge any lofty assumptions that this ordinance, affecting as it does but a handful of local merchants, bears any remote relation to or was motivated by the slightest concern for individual or

public health or morality (while at the same time those swarming eerily-lit human anthills, the huge automobile factories of Flint, continue their relentless night-and-day-seven-days-a-week grind and jolt) is to wrap a rhetorical flag of idealism around a mere cabbage. If we must indulge any assumptions on this score than I venture to uncloak one or two of my own. It is that the sole motivation for this towering example of primitive legislative art, obvious to a moderately sharp newsboy, was not health, not morality, not public welfare, but *money,* the good old American lust for the "fast buck," and that the only people who were ever really interested in this ordinance or its passage were none other than the smarting and envious (and evidently politically influential) business competitors of the victims themselves. So much for lofty assumptions.

The so-called police powers were put in our Constitution for the protection of the health, safety, morals and general welfare of the sovereign people of this State. They were not intended to be used as a convenient fiction or arbitrary community club for disciplining certain local merchants and favoring still others or for discharging real or imagined political debts or least of all for circumventing solemn constitutional prohibitions against class legislation and arbitrary and unreasonable discrimination. I find and hold this ordinance to be unreasonably discriminatory and therefore void in its entirety.

I pass to the second ground of invalidity, namely, that this ordinance is unreasonably discriminatory in view of the relevant State statute. My esteemed Brother in his opinion has confined himself only to the first ground of possible invalidity. He has written in this case as though there were no relevant State statute on the subject and as though the question of unreasonable discrimination could properly be decided here without regard for or any reference

to the existing State statute. In doing so he has followed the Michigan "Sunday ordinance" cases which he cites, and which cases likewise uniformly (and erroneously) ignore the State statute. But he has (as have his cited cases) also ignored or inadvertently overlooked still other Michigan case authority where this Court has properly made controlling reference to and comparison with the existing statute in testing the validity or invalidity of a similar "Sunday" ordinance.

That lone and rarely cited case is *Builders Association* v. *City of Detroit,* 295 Mich 272. There the "Sunday" ordinance was much like the present one except that it applied only to real-estate dealers instead of only to furniture dealers. And it further neglected to except from its operation those conscientious observers of Saturdays instead of Sundays, already specifically excepted by existing State law (RS 1846, ch 43, § 7, being CL 1948, § 435.7 [Stat Ann 1957 Rev § 18.855]). (We note in passing that this gap was significantly plugged by the present Flint ordinance, the framers of which ostensibly must have had much in mind this very case and statute—although, curiously enough, they fail to mention either the statute or the case in their briefs.) At any rate in *Builders* we unanimously held that the omission by the ordinance of the noted exception provided by the statute was an attempt to prohibit that which was permitted by existing State statute, thereby fatally conflicting with the State statute and rendering the ordinance void. While our decision in that case went off on a comparatively minor point which does not apply to our present case, the vastly significant point of the case is that our Court there necessarily (and properly) held that the legality of the Sunday ordinance there under consideration had to be judged with reference to and in comparison with the existing State Sunday laws. The entire burden

and thrust of our opinion there was that the State statute covered the field, and that any local Sunday ordinance which in its prohibitions went beyond the existing State statute was necessarily void. Thus the only Michigan case we have found which squarely considers the proposition has held that the State "Sunday" statute is paramount. (Since in this opinion I shall refer to this case frequently, henceforth I shall simply call it *Builders.*)

It is no valid distinguishing answer to say that *Builders* is known as a "conflict" case whereas virtually all the other cases cited by my Brother are labeled "discrimination" cases (I shall later return to this point). The applicable State statute cannot be applied or ignored as it pleases us. If a relevant statute which covers the field is the necessary focal point of reference in so-called "conflict" cases involving ordinances (as we held in *Builders* and have many times held in "non-Sunday" cases),* then it has simply got to be the necessary focal point of reference in any case involving possible discrimination. It may very well turn out that upon comparison with any such statute a questioned ordinance may prove not to be discriminatory. But the big point is that the applicable State statute cannot ever be

---

* Here are but a fraction of non-Sunday ordinance cases where we held the ordinance invalid as conflicting with existing State law: *Richards* v. *City of Pontiac,* 305 Mich 666 (ordinance put a 90-day limitation clause on the parking of trailers in a park within the city limits, and imposed additional license fee, in conflict with State regulations on the subject) ; *National Amusement Co.* v. *Johnson,* 270 Mich 613 (ordinance attempted to forbid walkathons and similar endurance races within the city, in conflict with the State law regulating such contests) ; *People* v. *McDaniel,* 303 Mich 90 (ordinance sought to regulate the size of outboard motors that could be used on lake within the city limits, in conflict with the State statute) ; *People* v. *McGraw,* 184 Mich 233 (Detroit ordinance imposed additional and conflicting regulations regarding automobile traffic within the city contrary to existing State law) ; *Noey* v. *City of Saginaw,* 271 Mich 595 (ordinance sought to close local drinking establishments earlier than the hours provided by regulations made under State law); *City of Grand Haven* v. *Grocer's Cooperative Dairy Co.,* 330 Mich 694 (milk ordinance in conflict with State law).

ignored when we have a discrimination case involving a local ordinance. Yet in our Sunday ordinance cases when the only issue considered was discrimination we have curiously and without exception totally ignored the statute. Hence the dearth of Michigan case authority on this point. One can scarcely cite case authority from one's jurisdiction on a proposition when the very point at issue has been resolutely ignored by the decided cases and simply never been discussed.

*Builders* went off on the comparatively narrow point already mentioned, and one which does not apply to our present case. It is further interesting to note that the ordinance in that case suffered from at least 2 of precisely the same additional disabilities which I regard as fatal to the present ordinance, namely, unreasonable discrimination and (to anticipate a little) fatal conflict with the statute because of, among other grounds, the increased penalty over that provided in the statute. Since these additional grounds were not discussed by us in that case, it is naturally not authority for or against the present propositions. As in the earlier discrimination cases decided by this Court, which I have already mentioned, we there found the ordinance invalid for sufficient reasons and, like busy judges everywhere, felt no irresistible compulsion to toil further to pile up additional grounds of possible invalidity. Since the disability which we properly found fatal to the ordinance in that case has been removed in the present ordinance, perforce we must now grapple with the knottier problem present here and in *Builders*.

Following our brief flirtation in *Builders* with what we submit is one of the prime grounds, if not the main ground, for determining the validity of any Sunday ordinance (or any other ordinance, for that matter, where the field is already covered by State statute), we were off again, in full cry, vainly at-

tempting to capture the elusive will-o'-the-wisp of unreasonable discrimination without any reference whatever to existing State law. These cases were essentially exercises in judicial futility and waste motion, much like trained surveyors attempting vainly to measure out a new plat with old string and guess work, all the while tripping over the ignored statutory yardstick lying under their feet.

Most of these later cases are already cited by my Brother and I need not repeat them. It is enough to say that in them we doggedly continued to ignore the relevant State law. The result is that our case law on the subject of the validity of ordinances in general and Sunday ordinances in particular is in a state of uncertainty and open conflict. We shall hereby attempt to lift and dispel some of the fog. It is time to quote a relevant portion of the State statute (CL 1948, § 435.1 [Stat Ann 1957 Rev § 18.851]), which provides as follows:

"No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, or be present at any dancing, or at any public diversion, show, or entertainment, or take part in any sport, game or play on the first day of the week: The foregoing provisions shall not apply to works of necessity and charity nor to the making of mutual promises of marriage nor to the solemnization of marriages. And every person so offending shall be punished by fine not exceeding 10 dollars for each offense."

That this statute may be more notable for its studied and widespread nonobservance than otherwise is something about which we mercifully need not speculate; the fact is that the legislative branch of our State government enacted it many years ago (113, to be exact) and it still stands unrepealed on our books. (And, ironically enough, this Court, while steadily ignoring the same statute in Sunday ordi-

nance cases, continues regularly to pay reverent homage to it in cases involving Sunday contracts.)

The constitutionality of this statute was long ago upheld, and we have also held that it must be enforced by civil action to collect the penalty, and that violation does not constitute a misdemeanor. (See *Yerkes* v. *Smith,* 157 Mich 557; *People* v. *Dixon,* 188 Mich 307 [Ann Cas 1918B, 385]; *Crawford* v. *Huber,* 215 Mich 564 [39 ALR 1392].)

I now come to the point. I have said earlier that there are usually no empirical tests or standards for determining whether an ordinance is unreasonably discriminatory. Fortunately on the present point we labor under no such vexing disability: the statute itself defines and establishes the class affected.

It is my view, then, that our Court has long been in error in overlooking the State statute and in instead attempting to test Sunday ordinances by inquiring merely whether there was any discrimination in the narrow and isolated class sought to be affected by the ordinance, whether real estate dealers, furniture dealers or what not. What we have accordingly done, in the current idiom, is to give a "green light" to our municipalities to "write their own tickets." Most simply stated, both the ordinances and we have long misapprehended the class affected by such local legislation. The class affected is not furniture dealers or real-estate dealers or any single one of all the other isolated trade groups usually embraced in the various Sunday ordinances we have considered. The class affected by Sunday legislation has long been determined, established and defined by the State statute on the subject; that class is no less than the *entire* population of the State of Michigan; and the class or kind of work prohibited is no less than *all* work of *all* kinds on Sundays. (The comparatively few exceptions stated in the various sections of the cited act need not here concern us.) Any local ordi-

nance which attempts to isolate and limit and narrow that class or that work is perforce unreasonably discriminatory and bad on its face because, among other things, it contravenes and conflicts with the broad class already created by the controlling statute. That is our proposition in a nutshell. That such a decision will, if it prevails, virtually scuttle all existing Sunday ordinances in Michigan is not a judicial problem. It may well present a grave problem for the legislature.

We return to *Builders*. In a sense the discrimination present in the ordinance there was doubly discriminatory: it not only sought to isolate and hit but a small fraction of the broad class already defined and covered by the State statute (as does the present ordinance) but it further sought to gather more victims into that small fraction already thus being discriminated against (by omitting the conscientious observers of Saturdays already excepted by the statute), something our present ordinance significantly does not do, and rather obviously did not do solely because of our decision in *Builders,* the only case in Michigan which ever considered the point.

I gather up the loose threads. Since by the State statute virtually all forms of Sunday toil or trade by virtually all of the people is already prohibited (necessarily including Sunday furniture dealing), it follows that this ordinance unreasonably discriminates and imposes upon one particular group of persons (furniture dealers) a more severe penalty than it imposes upon others in the same class similarly offending. It does something else. In practical effect it tells all other Sunday toilers in Flint (virtually all of whom must obviously continue to operate contrary to State law) that the penalty in the case only of furniture dealers will, among other things, be 30 times greater than it will be for them. This is a virtual public license and permit to these others to

continue to violate the State law. In a negative but no less real sense this ordinance lends community sanction and status, official recognition, and outright financial advantage and moral encouragement to that vast multitude of other Sunday violators in Flint that their continued violation of the State statute will be all right with the city fathers. Its very enactment is a knowing and slow municipal wink at our State law. In other words, this is discriminatory class legislation of the worst kind, isolating and penalizing one particular kind of potential violator out of the broad established class and by necessary effect also discriminatorily favoring all other violators who by statute were already included in the same class.

All prohibitory statutes and ordinances are, of course, to some extent discriminatory, from their very nature. While the exceptions permitted by the present statute are very narrow, and the class caught in its sweeping prohibitory net is indeed very broad (embracing virtually the entire population), in all candor one must concede that these few exceptions are discriminatory in their nature. But one discrimination does not authorize another, and the fact that the State statute may discriminate ever so little does not thereby authorize municipalities to discriminate ever so much, and to proceed to isolate and chop up and excessively penalize but a small fraction of the broad statutory class already established by statute and there only mildly discriminated against. That is precisely what has happened here.

This ordinance therefore constitutes a discrimination within a discrimination, being a local attempt illegally and unreasonably to discriminate against but part of that already legally discriminated against to a slight extent by the statute, to wit, virtually all Sunday trade and toil all over the State by virtually all of the people of Michigan. The only way such a

statute could possibly be made any more sweeping is to remove the few exceptions and declare a general statewide "cease work" on Sundays.

The cited annotation in 57 ALR2d 975 at 982 succinctly puts it this way:

"Occasionally an ordinance of the kind under consideration is held invalid on the theory that the discrimination attempted therein as between kinds of stores or kinds of commodities is violative of a statute, either because the statute permits no discrimination or does not permit discrimination of the kind attempted. This view is reflected in the cases listed below."

Naturally no Michigan cases are cited since we have never considered the problem. We may add that we also find no cases there cited against the quoted proposition.

I turn to the third ground of invalidity of this ordinance, namely, that it fatally contravenes and conflicts with the cited State statute, a point I have already obliquely touched upon in the previous section. While an ordinance may be held invalid because of conflict with a State statute (which, as already noted, we have many times held except only when a local Sunday ordinance was involved), it does not necessarily follow that the ordinance is also void as being unreasonably discriminatory. The converse is not always true, however. Thus when an ordinance is held void for being unreasonably discriminatory because of deviation from the class norms and standards established by a controlling State statute (as I have just held), then that ordinance is, by virtue of that fact alone, also invalid by reason of the consequent contravention and conflict with the same statute. (Since if I am right this ordinance has already been slain, perhaps all this is academic; but there is such a dense blanket of fog in this area that I choose to spell it out.) And so it is

here. That, then, is the first ground of invalidity of the present ordinance: on the ground of conflict *because* of the discriminatory departure from statutory norms.

*Builders* itself is a good example of what I mean, being essentially a discrimination case in that the bad ordinance there sought to enlarge the group embraced by the ordinance by discriminatory deviation from the classification and standards already laid down by the statute; and it is also necessarily a conflict case because of the consequent collision with and departure from those paramount statutory standards, that is, the conflict there necessarily grew out of the attempted discrimination.

But there are still other grounds of fatal conflict present here without any bootstrap wedding of our discussion to discrimination. One of the most obvious and glaring grounds of such conflict (already broadly hinted at) is that the penalty of the present ordinance vastly exceeds that of the State statute ("And every person so offending shall be punished by fine not exceeding 10 dollars for each offense."), and that the ordinance is therefore invalid because on its face it contravenes and conflicts with the existing penalty prescribed by paramount State statute—all this aside from any possible question of discrimination.

The question confronting us here must not be confused with the situation which existed in *Melconian* (*Melconian* v. *City of Grand Rapids,* 218 Mich 397 at 412), where this Court among other things considered the validity of the penalty of an ordinance imposing "a fine not to exceed $500 * * * or imprisonment * * * not more than 90 days, or both" for violation of an ordinance regulating and licensing taxicabs, and where no conflict with any existing statutory penalty for the same offense was involved. We there decided that since the questioned penalty

did not exceed the general limitation on penalties contained in the general legislative grant of authority to home-rule cities to enact penal ordinances (citing the then substantial equivalent of CL 1948, § 117.4i, subd [10] [Stat Ann 1949 Rev § 5.2082, subd (10)]), and further that since under the circumstances there existing the penalty was not deemed unreasonable, the ordinance was therefore not invalid on that score. I repeat, no conflict with any existing statutory penalty for the same offense was there involved or discussed. I am not saying, then, that an ordinance may not in a proper case ever impose a penalty as large or even larger than the maximum penalty provided under the present ordinance (it should be noted that the various statutory limitations on penalty vary somewhat, depending upon the type of municipality), but I do say and strongly insist, however, that when a valid State statute has already provided a maximum penalty for the same prohibited course of conduct, no local ordinance may ever increase that penalty, not even by 50 cents. I shall expand my reasons presently.

Any suggestion that the present ordinance here is valid, then, because the penalty there is within the penalty limitation permitted by the legislative grant (as just discussed in referring to *Melconian*) may be swiftly laid to rest. The very home-rule act which imposes this limitation, and the same one by which the legislature conferred any power on the city of Flint to pass any penal ordinances at all, contains this further provision (CL 1948, § 117.36 [Stat Ann 1949 Rev § 5.2116]): "No provision of any city charter shall conflict with or contravene the provisions of any general law of the State." It follows that this applies as well to all ordinances enacted under any such city charter.

In 138 ALR 1208 there is an annotation entitled "Effect of unreasonableness, or variance from consti-

tutional, charter, or statutory provisions, of penalty prescribed by ordinance." Its opening paragraph is much to the point in our present discussion, and I quote it:

"It is an elementary principle of law, established by the unanimous concurrence of all relevant authorities, that municipal ordinances must not be inconsistent with or repugnant to the Federal and State Constitutions. So far as their constitutional validity is concerned, they are considered in the same light as laws of the State and must conform to the supreme organic law in every respect. In determining whether any municipal act conflicts with the Constitution, its substance, and not its form, must always be the test. The constitutionality of an ordinance is also determined not only by what has been done, but by what may be done, under its provisions. *It is a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the State. An ordinance in conflict with a State law of general character and State-wide application is universally held to be invalid.* This principle is frequently expressed in the declaration that municipal authorities, under a general grant of power, cannot adopt ordinances which infringe the spirit of a State law, or are repugnant to the general policy of the State. 37 Am Jur, Municipal Corporations, p 767, § 156; p 787, § 165." (Emphasis added.)

Since there are few propositions of law, however startling, for which one cannot find some sort of precedent, however, dubious, and further since annotations of this sort are not normally written to celebrate legal propositions followed by all, it is not surprising to find that there are cases going both ways on this subject. And so there are. Our particular problem (ordinance enlarging the penalty prescribed by State statute for the same offense) seems never to have been squarely decided in Michigan. (In *People* v. *Drost,* 353 Mich 691 at 695 we

hinted rather broadly that if the maximum penalty of the ordinance there considered and held valid had exceeded that of the statute [here again we significantly compared a non-Sunday ordinance with the applicable statute] we might have held it invalid, but it was only a hint, and the present point was not squarely involved because there the penalty did not exceed that of the statute.)    The view to which I presently subscribe is in the cited annotation maintained both by numerical State authority and in the number of decided cases.    I also think it is better law.    The annotation (p 1212) introduces its citation of these majority cases as follows:

"The question frequently arises whether, even in the absence of a statutory limitation, the fact that the penalties provided by ordinance vary from those prescribed by statute for the same offense does not serve to invalidate such an ordinance.    There appears to be some conflict of authority on this question.    The following cases hold that ordinances providing penalties at variance with those fixed by statute for the same offense are void, at least to the extent that such penalties exceed or fall short of those in the statutes:"

Characteristic of the reasoning of these majority cases (which I shall presently amplify) is this quotation drawn from the cited annotation (p 1213) in turn quoting from *State* v. *Paille* (1939), 90 NH 347, 350 (9 A2d 663):

" 'For a municipality to ordain that an additional penalty for a violation within its borders shall be imposed is in effect an attempt to amend the statute in local application.    Two penalties for the same offense would be enforceable if the ordinance were to be sustained.    A statute operating in all municipalities where it is in force with no difference by its terms in application to them would receive unequal effect.    If a municipality might add to the severity of

punishment, it would be as arguable that it might lessen it. The proposition is so absurd in its manifest disregard of the basic organization of the State government as to make further discussion needless.' "

The annotation goes on to reiterate that when the penalty of the ordinance exceeds that of the statute the ordinance is sometimes held to be invalid only as to the excess in penalty. But that won't work here. It won't work because again the problem of discrimination is inevitably involved with that of conflict. If this ordinance had simply re-enacted the entire State Sunday statute or again had instead simply prohibited "drunk driving" or (as in *People* v. *Drost, supra*) a local version of "reckless driving" (as do specific State statutes confined to these subjects) but had merely provided a penalty exceeding that of those statutes, we might see where it would at least be arguably practical and workable for us to declare the ordinance invalid only as to the excessive penalty. But if we do that here we would still have palpable discrimination because then we would still be permitting the ordinance to isolate and prohibit and again penalize only *part* of that which is already prohibited and uniformly penalized under the existing State statute. Therefore we must hold the present ordinance void in its entirety.

If it be thought extravagant to suggest that any Michigan municipality might ever, by ordinance, dare undertake to provide a penalty lower than that provided by a State penal statute for the same offense, it is not extravagant; a community did dare; and our Court solemnly held the ordinance valid. The case is *People* v. *Hanrahan,* 75 Mich 611 (4 LRA 751). There a Detroit ordinance provided a maximum penalty of $500 or, in default of payment, commitment for not more than 6 months in jail for the offense of keeping a house of ill fame. Thereafter the

State legislature by statute made the same offense a felony and prescribed a possible prison term and a larger money penalty. Still later Hanrahan was prosecuted, convicted and sentenced under the ordinance. Upon appeal his conviction was affirmed, our Court in effect holding, in an almost totally opaque opinion (during which a species of poetry was quoted), that the subsequent passage of the State statute did not repeal or disturb the ordinance or its penalties. I shall not attempt to unravel the Court's reasoning. Characteristic of its general murkiness is the following passage drawn from page 627, and which must be rescued from oblivion:

"There is nothing in the amendment [to the State statute] indicating that the law should have a more extended territorial operation than before. There is nothing in the current history of events which indicates that there was a necessity for a more stringent enactment to prevent and punish this crime in the city of Detroit; on the contrary, we cannot well ignore the notorious fact that the necessity for a more severe penalty arose from the atrocious acts of parties who kept such houses in the vicinity of lumbering camps and mining towns, at places very remote from the city of Detroit, and whose nefarious schemes in enticing females into their dens of iniquity shocked the sensibilities of the whole people of the State, and resulted in the amendment of the law, declaring it a felony, and ordering the act to take immediate effect. Where no repealing words are inserted in a later act, a strong presumption arises that no repeal was intended, or it would have been expressed."

Certainly the net effect of our decision there was to hold that a local penal ordinance might prescribe a lesser penalty than that prescribed by State statute for precisely the same offense. I think this is utterly bad law.

We somehow contrived to reach our astonishing decision in *Hanrahan* without so much as citing *People* v. *Swift*, 59 Mich 529, where we held that the city of Detroit might not by ordinance reduce the offense of bribery (made a felony by State statute) to a misdemeanor in situations where certain city officials were involved.

But this problem cannot be resolved by weighing and comparing ancient cases decided when much of our modern municipal law was suffering the pangs of birth. We must look to the future. What can happen if we permit this ordinance to stand? Broad considerations of public policy reaching far beyond this particular ordinance are involved here. Discrimination is inevitably involved, as well as the wisdom and obvious desirability of the State legislature being able to pass laws and prescribe penalties treating all our people alike. Those who would uphold this ordinance must be prepared to face the possible disastrous consequences of their action. If we sustain this ordinance, then by the same *"Hanrahan"* logic other communities can enact still other ordinances sharply *lowering* almost to the vanishing point penalties already provided by State law for the same prohibited course of conduct. "Wide-open" communities could spring up here, puritanical "blue-nosed" communities there, and we find it both droll and faintly horrifying to speculate that they might even uneasily adjoin each other.

Nor is the problem confined solely to local Sunday laws. On the basis of the unfortunate *Hanrahan Case* (or if we should sustain this ordinance) it could apply equally to many other penal laws. One can envision a situation approaching the fantastic. One community, for example, could "throw the book" at its drunk drivers; in the next they might continue prosaically to be punished under State statute; in still a third they might presumably be feted and pre-

sented with a key to the city. These are real pressing possibilities, however amusing the illustrations may seem. The penalties provided by many existing State statutes would become simply amusing launching pads from which all local deviations might soar. Discrimination would become general and would inevitably assume grotesque proportions. I have said enough.

We come to our fourth and final ground of invalidity, namely, that this ordinance is void because the penalty is unreasonable and excessive. The ALR annotation last cited goes on (p 1218) to cite cases holding that where the penalty of an ordinance is excessive beyond reason (citing among its authorities *Matter of Frazee,* 63 Mich 396 [6 Am St Rep 310], which was not a "Sunday" case and did not involve conflict with any State statute) then, because or irrespective of any State statute, it may be held void on that ground alone. That is further ground of invalidity of this present ordinance. It seeks to make a criminal offense out of that which the statute did not; it would provide possible imprisonment where the statute does not; and finally it undertakes to raise the possible maximum money penalty by 30 times over that already provided by State law for the same offense ($10 against $300). And it does so under such circumstances of conflict and bold discrimination that this is an additional ground for holding this particular penalty unreasonable and the ordinance void.

Finally, it is no good to suggest that we dare not consider the precise grounds here discussed because all of them may not have been specifically raised, urged and considered below. Large questions of public policy are manifestly involved here; the constitutionality of this ordinance has been broadly attacked on the several usual grounds; the record contains all the facts necessary for us to make a proper

determination; manifestly we must take judicial notice of our own statutes; and in such circumstances we can scarcely permit the possible lack of industry or resource of particular counsel to compel us helplessly to hold valid an ordinance which, when at last we face up to its manifold disabilities, is plainly invalid. (See, generally, *Meek* v. *Wilson,* 283 Mich 679.) Especially must this be so when counsel may have been discouraged from raising some of the precise points by the demonstrable error of some of our own past decisions.

Our duty is clear. It is to strike down this bad ordinance and in doing so tell our various municipalities in clear and unmistakable terms that they cannot continue to enact unreasonably discriminatory local legislation and that moreover they cannot continue to tinker with the penalties already provided by State law for the same offenses. We have one final job; it is to lay the troubled ghost of *People* v. *Hanrahan,* 75 Mich 611 (4 LRA 751). That case and all others like it should be hereby overruled.

Decree should be affirmed; no costs, questions of broad public moment being involved.

BLACK, J., concurred with VOELKER, J.

EDWARDS, J. (*dissenting*). I concur in affirmance of the decree below.

The general rule pertaining to ordinances which deal with a subject also covered by a statute was stated thus by this Court in *Builders Association* v. *City of Detroit,* 295 Mich 272, 275:

"The fact that there is a State law on the same subject as that covered by a municipal ordinance relating to Sunday observance does not render the ordinance invalid, provided the city has authority, either express or implied, to legislate in regard to

the subject, and its legislation is not in conflict with the State enactment."

As Mr. Justice VOELKER points out, the penal provisions of the ordinance before us are in obvious and substantial conflict with the State statute pertaining to Sunday occupations.   CL 1948, § 435.1 *et seq.* (Stat Ann 1957 Rev § 18.851 *et seq.*)

SMITH, J. (*concurring*).   The only issue presented to us by either party, as taken from the "statement of question involved," is this: "Was the trial court correct in holding the ordinance void because of arbitrary and discriminatory classification?"   Such, also, was the issue upon which the case was tried below. The trial court noted that:

"The power of the city to enact a general Sunday closing ordinance is not in question in this suit, neither is the power to restrict Sunday closing to certain businesses and occupations if the distinction between those included and those excluded bears any rational relation to the purpose of the act."

Certain of my brethren, however, have addressed themselves to the validity of the ordinance when measured against the existing State statute on the same topic.   This point, which is indeed important and may well be controlling, is not before us.   If decision upon this question of public importance affecting the conduct of all businesses in the State is to turn in whole or in part upon such point, the litigants should be called upon to rebrief, reargue, and resubmit the case.   Such not having been ordered, and the case reaching us solely upon the classification issue, I concur with Mr. Justice KAVANAGH's conclusions with respect thereto.